707 So.2d 851 (1998)
The STATE of Florida, Lawton M. Chiles, Jr., Individually and as Governor of the State of Florida, Department Of Business and Professional Regulations, and The Agency for Health Care Administration, Appellants,
v.
The AMERICAN TOBACCO COMPANY; American Brands, Inc.; R.J. Reynolds Tobacco Company; et al., Appellees.
Nos. 96-3434, 96-4193.
District Court of Appeal of Florida, Fourth District.
March 4, 1998.
*852 Robert M. Montgomery, Jr. of Montgomery & Larmoyeux, and Edna L. Caruso and Philip M. Burlington of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for appellants.
Justus W. Reid of Reid Metzger & Associates, P.A., West Palm Beach, Norman A. Coll, Chris M. McAliley and Christopher N. Johnson of Coll Davidson Carter Smith Salter & Barkett, P.A., Miami, and William J. Crampton of Shook, Hardy & Bacon L.L.P., Kansas City, Missouri, for Appellee-Loews Corporation.
Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A., West Palm Beach, and Simpson Thacher & Bartlett, New York City, for appellee-B.A.T. Industries P.L.C.
Edward A. Moss of Anderson, Moss, Sherouse & Petros, P.A., Miami, and Kirkland & Ellis, Chicago, IL, for Appellee-Batus Holdings, Inc.
WARNER, Judge.
The state appeals the trial court's order determining that it lacked jurisdiction over three parent corporations of tobacco companies involved in the Tobacco Litigation. While the state claims that it presented sufficient evidence of an agency relationship to sustain jurisdiction, we agree with the trial court that the evidence presented was insufficient and affirm.
This case arises from the state's suit against tobacco companies for damages incurred by the state through payments for tobacco-related illnesses to medicaid patients. In addition to the tobacco companies, the state sued B.A.T. Industries, BATUS Holdings ("BATUS"), and Loews Corporation. B.A.T. Industries is a British corporation and is the parent corporation of its wholly owned subsidiary, Brown & Williamson, a cigarette manufacturer and a defendant in the state's suit. BATUS is another wholly owned subsidiary of B.A.T. Industries operating in the *853 United States and was in charge of managing B.A.T. Industries' business interests in this country. Loews Corporation is a holding company for various corporations, one of which was Lorillard, a tobacco manufacturer and a defendant in the underlying lawsuit.
The state made general allegations that the defendants, including the parent corporations, banded together to prevent the public from becoming fully aware of the health risks of cigarette smoking. They did this by forming allegedly independent research groups such as the Council for Tobacco Research ("CTR") and the Tobacco Institute ("TI"), which in fact the tobacco companies controlled. The state alleged that the defendants also prevented the marketing of safe cigarettes, exploited the addictive powers of nicotine, and targeted minors. The trial court dismissed all but three of the eighteen counts in the second amended complaint. The remaining claims included several for monetary relief and one for injunctive relief, requesting that the companies be enjoined from engaging in consumer fraud; requiring them to disclose and publish all research previously conducted directly or indirectly for them on issues of smoking and health; demanding them to fund a corrective public education campaign on the dangers of smoking; and requiring them to take steps to prevent the sale of cigarettes to minors. The state also sought the following from the defendants: funding for clinical smoking cessation programs in Florida, disgorgement of any profits earned on the sale of the companies' products in Florida, and dissolution of the CTR and the TI.
Subsequent to the hearing of this appeal, the remaining parties settled the underlying suit as to all monetary claims between the parties. The settlement agreement specifically released the parents and affiliates of the settling parties. However, the settlement agreement did not resolve those issues which requested non-economic injunctive relief. Therefore, we construe this as limiting the relief requested against the parent corporations to an injunction prohibiting further consumer fraud, requiring the companies to disclose previous research, ordering the companies to take steps to prevent the sale of cigarettes to minors, and ordering the companies to dissolve the CTR and the TI. As to all other claims, the settlement renders this appeal moot.
After the filing of the complaint, the appellees moved to dismiss the complaint for lack of jurisdiction, filing numerous affidavits contesting jurisdiction. In granting appellees' motions to dismiss, the trial court found as follows:
Whatever allegations the Plaintiffs have made have been controverted by the Defendants in affidavits and/or supporting documentation and evidence shifting to Plaintiffs the burden of proof by a preponderance of the evidence to support jurisdiction. The burden having been shifted, the State has failed to prove in each of the cases that these three entities have transacted business on a regular basis in this state or committed any tort in this state. The facts themselves are not substantially in controversy. The question is whether the facts are sufficient by a preponderance of evidence to support the theories of alter-ego, aiding and abetting, agency, and/or "mere instrumentality" regarding the aforementioned torts. B.A.T. Industries, PLC; Loew's Corporation; and Batus Holdings, Inc., do not market, manufacture, sell, or deliver tobacco products in Florida or place these products in the stream of commerce. These companies are holding companies not actively operating tobacco businesses.
The state appeals from this ruling.
In Venetian Salami Co. v. Parthenais, 554 So.2d 499 (Fla.1989), the supreme court explained the necessity to comply with both the long-arm statute and due process in order to establish personal jurisdiction over a non-resident defendant. The supreme court summarized its Venetian Salami holding in Doe v. Thompson, 620 So.2d 1004, 1005 (Fla. 1993):
This Court, in Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989), explained the two-step inquiry for determining long-arm jurisdiction over a nonresident defendant. A court first must determine whether the complaint alleges sufficient jurisdictional facts to bring the *854 action within the ambit of our long-arm statute. Id. at 502. A court then must determine whether sufficient minimum contacts exist between our forum state and the defendant to satisfy the Fourteenth Amendment's due process requirements in short, whether a nonresident defendant "should reasonably anticipate being haled into court" in Florida. Id. at 500 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).
We explained in Venetian Salami that a defendant wishing to contest the allegations of the complaint concerning jurisdiction or to raise a contention of insufficient minimum contacts must file an affidavit in support of his or her position. The burden is then placed upon the plaintiff to show by counter-affidavit the basis upon which jurisdiction is obtained. Id. If relevant facts set forth in the respective affidavits are in direct conflict, then the trial judge should hold a limited evidentiary hearing on the issue of jurisdiction. Id. at 503.
Id. In the instant case, the trial court found that the plaintiff's affidavits and proofs were insufficient to show a basis for the assertion of personal jurisdiction. While the state contends that there was sufficient proof to submit the issue to the jury, the determination of jurisdiction is not a jury question but instead must be determined by the court. See Venetian Salami, 554 So.2d at 499; see also John Scott, Inc. v. Munford, Inc., 670 F.Supp. 344, 345-46 (S.D.Fla.1987).
In its pleadings, the state contended that Brown & Williamson and Lorillard were the agents or alter egos for B.A.T. Industries, BATUS, and Loews, respectively. On appeal, the state has abandoned the contention that the subsidiaries are alter egos of the appellees, such that the corporate veil can be pierced, as they have not shown that the subsidiaries were formed for any improper purpose. See Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114 (Fla.1984); Nichols v. Paulucci, 652 So.2d 389 (Fla. 5th DCA), rev. denied, 659 So.2d 1088 (Fla.1995), and cert. denied, -516 U.S. 1046, 116 S.Ct. 707, 133 L.Ed.2d 662 (1996). Instead, the state relies primarily on its claim that the subsidiaries were simply agents for the parent corporations.
Section 48.193, Florida Statutes (1995), provides in pertinent part:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
(b) Committing a tortious act within this state.
....
(f) Causing injury to persons or property within this state arising out of an act or omission by the defendant outside this state, if, at or about the time of the injury, ...
....
2. Products, materials, or things processed, serviced, or manufactured by the defendant anywhere were used or consumed within this state in the ordinary course of commerce, trade, or use.
(emphasis added). The elements of an agency relationship under Florida law are (1) acknowledgement by the principal that the agent will act for it, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent. See Goldschmidt v. Holman, 571 So.2d 422, 424 n. 5 (Fla.1990) (citation omitted). The issue of control is critical to the determination of agency. See Parker v. Domino's Pizza, Inc., 629 So.2d 1026 (Fla. 4th DCA 1993).
The law is clear that the mere presence of a wholly owned subsidiary is insufficient to form a basis for the assertion of personal jurisdiction. See, e.g., Walt Disney Co. v. Nelson, 677 So.2d 400 (Fla. 5th DCA 1996); Qualley v. International Air Serv. Co., 595 So.2d 194 (Fla. 3d DCA), dismissed, 605 So.2d 1265 (Fla.1992). However, pursuant to the agency theory, the state alleges *855 that the parents controlled their subsidiaries. As to the control element of the agency relationship, the amount of control the parent exercises must be very significant. In Vantage View, Inc. v. Bali East Development Corp., 421 So.2d 728 (Fla. 4th DCA 1982), modified on other grounds by Dania Jai-Alai Palace, 450 So.2d at 1114, this court explained:
the parent corporation, to be liable for its subsidiary's acts under the ... agency theory, must exercise control to the extent the subsidiary "manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation."
Id. at 733 (quoting Baker v. Raymond Int'l, Inc., 656 F.2d 173, 181 (5th Cir.1981))(emphasis added); see also Aquila Steel Corp. v. Fontana, 585 So.2d 426, 427 (Fla. 3d DCA 1991)(addressing substituted service under section 48.181 and whether fact that party served was wholly-owned subsidiary of party for whom service was intended, court states: "Only where there is a showing by plaintiff that the parent corporation exercised such a degree of control over its subsidiary that the activities of the subsidiary were in fact the activities of the parent within the state is substituted service of process permitted.")(quoting Volkswagenwerk Atkiengelselischaft v. McCurdy, 340 So.2d 544, 546 (Fla. 1st DCA 1976)); Folwell v. Bernard, 477 So.2d 1060, 1063 (Fla. 2d DCA 1985)(vicarious liability sought to be imposed through principles of agency unwarranted in absence of evidence that purported principal dominates and controls purported agent).
A comparison of two federal cases illustrates the high degree of control necessary for a finding of agency sufficient to warrant jurisdiction over a parent corporation for the acts of a subsidiary. In John Scott, the federal district court found that an agency relationship between a parent and its subsidiary was established for the purpose of asserting long-arm jurisdiction where the subsidiary received financing from the parent for the transaction involved in the lawsuit; employees of the parent were paid by the subsidiary for their work in connection with the transaction; the parent's annual report referred to the subsidiary's manufacturing plants as its own; a representative of the parent corporation met with the plaintiff corporation to negotiate the transaction in question; purchase orders were sent to the parent corporation; the subsidiary acted on behalf of the parent in attempting to renegotiate prices of the contract; and an employee of the parent had the power and exercised it in reviewing the contract entered into between the subsidiary and the plaintiff. See 670 F.Supp. at 346. Thus, the parent participated actively in the day-to-day management of the subsidiary in the very transaction which was being litigated.
In contrast, the court in Kramer Motors, Inc. v. British Leyland, Ltd., 628 F.2d 1175 (9th Cir.1980), found the facts to be insufficient to support personal jurisdiction over three British parent corporations on an agency theory:
The record reveals the following: At various times, some directors of the British defendants have sat on the board of BLMI, the United States importer subsidiary. From 1971 to 1975 the president of BLMI served as a director of BLIL, its British parent.... At times relevant to this action, BLIL was generally responsible for the sale of British Leyland products outside the United Kingdom, had general executive responsibility for the operation of BLMI, and reviewed and approved its major policy decisions. BLIL has guaranteed obligations of BLMI to United States banks. Executives of the British companies work closely with executives of BLMI on pricing of vehicles for the United States market and sometimes travel to the United States for talks on pricing. United States residents, through a "personnel export screen," can originate a car purchase through BLMI, then go to Europe on vacation, pick up the car there and bring it back to the United States. BLIL approved the BLMI proposal for consolidating distribution of British Leyland vehicles within the United States.
These facts are insufficient to make BLMI an "alter ego" or "agent" of any of the British corporations so as to make any of them subject to jurisdiction solely *856 through BLMI's presence in the United States. The record does not show that executives and directors of the British corporations ever controlled the BLMI board or formed a board majority. None of the United Kingdom companies controls the internal affairs of BLMI or determines how it operates on a daily basis. BLMI has primary and exclusive responsibility for the distribution, marketing, and sale of British Leyland vehicles, parts and accessories within the United States. BLIL did not implement or supervise the reorganization plan. It proposed no changes in the plan. The parent and subsidiary have dealt with each other as distinct corporate entities.
Id. at 1177-78 (citations and footnote omitted).
With respect to B.A.T. Industries, the state points to many of the company's policy statements which established goals for its subsidiaries as indicative of control, and thus an agency relationship. However, as B.A.T. Industries points out, such directives are normal for a sole shareholder to give to its subsidiary. It does not show the operational control of the subsidiary which is necessary to establish personal jurisdiction. Instead, the documents show that B.A.T. Industries is a holding company of approximately 500 subsidiaries worldwide with a corporate structure that offers a high degree of autonomy in operations to its subsidiary groups. In those documents and affidavits, there is not shown a level of control comparable to the control evidenced in John Scott, for instance. Nor do we find that the evidence presented as to BATUS shows sufficient control of Brown & Williamson to warrant a finding of personal jurisdiction based on agency status. BATUS is not even a parent corporation to Brown & Williamson. BATUS appears from the documents to be an American management company for B.A.T. Industries, in charge of monitoring the activities of the B.A.T. Industries subsidiaries in the United States, and advising Brown & Williamson, if necessary. There are no documents evincing control by BATUS of the subsidiary. Finally, with respect to Loews Corporation, there was also ample evidence presented that Loews Corporation does not direct the day-to-day business of Lorillard and that it monitors its subsidiaries to make sure that competent individuals are running its subsidiaries but allows its subsidiaries to run autonomously.
Our review of the record convinces us that the trial court was correct in its finding that the parent corporations did not control the subsidiaries to justify personal jurisdiction over them in Florida. We also find the state's alternative argument that jurisdiction can be found on a conspiracy theory is unavailing because there was no count for conspiracy alleged against these appellees (or any of the appellees); conspiracy is not a separate or independent tort in any event, see Ford v. Rowland, 562 So.2d 731, 735 n. 2 (Fla. 5th DCA 1990); and all of the counts which might have involved a conspiracy, if any, were settled as to all parties, including the parent corporations and affiliates of the settling defendants.
Affirmed.
POLEN, J., and DONNER, AMY STEELE, Associate Judge, concur.