[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-14651
Non-Argument Calendar

_____

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**May 19, 2005**
**THOMAS K. KAHN**
**CLERK**

D.C. Docket No. 04-00054-CV-ORL-31DAB

CAROL ABRAMSON,
IRA ABRAMSON,

Plaintiffs-Appellants,

versus

THE WALT DISNEY COMPANY,
WALT DISNEY WORLD COMPANY,
WALT DISNEY WORLD HOSPITALITY AND RECREATION
CORPORATION,

Defendants-Appellees.

_____

Appeal from the United States District Court for the
Middle District of Florida

_____

**(May 19, 2005)**

Before TJOFLAT, BIRCH and PRYOR, Circuit Judges.

PER CURIAM:

Carol Abramson and her husband, Ira Abramson, appeal the district court's order granting defendant-appellee Walt Disney Company's ("WDC") motion to dismiss for lack of personal jurisdiction. We AFFIRM.

## I. BACKGROUND

In November 2001, Carol Abramson tripped over a railing while walking through a darkened corridor at Disney's Animal Kingdom in Florida. R3-1 at 1. She fell and broke her hip. Id. In May 2002, the Abramsons filed a personal injury action against WDC, Walt Disney World ("WDW"), and Walt Disney World Hospitality and Recreation Corporation ("HRC") in the Eastern District of New York. Id. WDC moved to dismiss for failure to state a cause of action pursuant to Federal Rule of Civil Procedure 12(b)(6) and WDW and HRC moved to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2). R1-10, 11. Following the Abramsons' response and a hearing, the district court denied WDW and HRC's motion to dismiss for lack of personal jurisdiction, and transferred the case to the Middle District of Florida; it declined to address WDC's motion to dismiss for failure to state a claim noting that it would be more appropriately handled by the transferee court. R2-12, R3-25 at 1, 8, 9.

Following the transfer, the Abramsons were granted leave to file an amended complaint. R4 at 52. In the amended complaint, the Abramsons

2

identified WDC as "a Delaware corporation with its principal place of business in California[,]" WDW as a subsidiary of WDC, and "a Delaware corporation with its principal place of business in Florida[,]" and HRC as a subsidiary of WDC and WDW and a "Delaware corporation with its principal place of business in Florida." R4-53 at 2. The Abramsons alleged that the principal business of both WDW and HRC was the ownership, management, and operation of various integrated WDC facilities in Florida, including Animal Kingdom. Id. They described WDW and HRC as "'sister' subsidiaries" which were both owned, operated, and served as agents for WDC. Id. at 2-3. They also claimed that WDC's Chairman/Chief Executive Officer ("CEO") and WDC controlled the day-to-day operations of WDW and HRC. Id. at 3-4.

In response to the amended complaint, WDC moved to dismiss for lack of personal jurisdiction and WDW and HRC filed an answer. R4-54, 55. In support of the motion to dismiss, WDC attached the affidavit of WDC Senior Vice President – Eastern Regional Counsel and Assistant Secretary Kenneth E. Newman. R4-54, Ex. 2. Newman explained that WDC's "business activities . . . consist of ownership of stock" of various entertainment enterprises and that it did not "conduct business in the State of Florida[,]" and that WDC did not "control the business activities" of either WDW or HRC. Id. at 2, 3. The Abramsons replied

3

with the affidavit of their attorney, Eric Turkewitz, in which he commented that based on his "personal knowledge" as a result of various materials which he had read, WDC conducted business directly in Florida. R5-60 at 1, 2. Turkewitz's affidavit was supported by copies of internet articles, letters to WDC stockholders from WDC's Chairman/CEO, and excerpts from WDC's CEO's autobiography. Id., Exs. A-H. In the articles, the WDC CEO was quoted as claiming that he was directly and personally involved in operations in Florida, including at Animal Kingdom, and that all of the Disney-related enterprises were in the business of "maximiz[ing the profits]" for WDC through their "interdependence." R5-60 at 2, 3, 4, Ex. C. The "interdependence" at Animal Kingdom involved using WDC's successful past films involving animals as a basis for shows and WDC's planned films involving animals as a basis for rides. Id. at 4. The district court granted WDC's motion to dismiss for want of personal jurisdiction. R5-68. Following the district court's Federal Rule of Civil Procedure 54(b) certification, the Abramsons appealed.[1]

---

[1] The Abramsons timely appealed and moved for certification under Rule 54(b). The appeal was filed with this court, but was dismissed for lack of jurisdiction because the district court had not yet certified the case. Abramson v. Walt Disney Company, No. 04-12590 (11th Cir. Aug. 10, 2004).

On appeal, the Abramsons argue that the district court erred by failing to allow them discovery regarding the jurisdictional issue, by failing to hold an evidentiary hearing, and by granting WDC's motion to dismiss.

## II. DISCUSSION

"We review a district court's dismissal for lack of personal jurisdiction de novo." United States SEC v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997). We review a district court's decision as to whether to hold an evidentiary hearing on the jurisdictional issue for abuse of discretion. Cliff v. Payco Gen. Am. Credits, Inc., 363 F.3d 1113, 1121 (11th Cir. 2004); see also Walt Disney Co. v. Nelson, 677 So. 2d 400, 403 (Fla. Dist. Ct. App. 1996) (observing that the trial court need not hold an evidentiary hearing unless the affidavits are not "factually reconcilable"). We also review the district court's failure to order discovery on the jurisdictional issue for abuse of discretion. Leigh v. Warner Bros., Inc., 212 F.3d 1210, 1214 (11th Cir. 2000).

Absent an evidentiary hearing on a motion to dismiss for want of personal jurisdiction, the district court must first determine that the plaintiff has established a prima facie case of personal jurisdictional over the nonresident defendant which is capable of withstanding a directed verdict motion. Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990). In making this determination, the district court must

5

accept the plaintiff's factual allegations, unless those allegations are contested by the defendant's affidavits. Id. If the allegations are contested, the district court should construe all reasonable inferences in favor of the plaintiff. Id. Where the parties' affidavits cannot be reconciled, the trial court should hold an evidentiary hearing to resolve the jurisdictional issue. Venetian Salami Co. v. Parthenais, 554 So.2d 499, 503 (Fla. 1989).

The court must then engage in a two-part analysis to determine whether it has jurisdiction over the nonresident defendant, and can exercise that jurisdiction only if both prongs are satisfied. Madara, 916 F.2d at 1514. The first prong of that analysis requires examination of whether a basis of jurisdiction is provided under the forum state's long arm statute. Id. If that prong is met, the second prong requires consideration of whether there are sufficient minimum contacts to satisfy due process concerns. Id.

Because the reach of a forum state's long arm statute is a question of state law, we construe it as would the state's highest court. Id. In Florida, a nonresident is subjected to jurisdiction for "[o]perating, conducting, engaging in, or carrying on a business or business venture . . . in this state," "committing a tortious act within this state," or engaging "in substantial and not isolated activity within this state." FLA. STAT. § 48.193(1)(a) and (b), and (2). The necessary

6

minimum contacts between the foreign corporation and the state, for the assertion of general jurisdiction, must be "continuous and systematic." Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000). A corporation which engages in substantial activity in a state through a subsidiary is subject to personal jurisdiction in Florida. Universal Caribbean Establishment v. Bard, 543 So.2d 447, 448 (Fla. Dist. Ct. App. 1989). To determine whether a foreign corporation is liable based on a subsidiary's substantial activity, we consider the ownership of the subsidiary, the business activities of the subsidiary, and the financial relationship between the corporation and the subsidiary . Meier v. Sun Int'l Hotels, Ltd., 188 F.3d 1264, 1272-73 (11th Cir. 2002). Because "the mere presence of a wholly owned subsidiary is insufficient to form a basis for the assertion of personal jurisdiction," one of the factors to be considered is the amount of control exercised by the foreign corporation. State of Florida v. American Tobacco Co., 707 So. 2d 851, 854-55 (Fla. Dist. Ct. App. 1998). To establish an agency relationship, the foreign corporation must exercise such control that the subsidiary's sole purpose for existence is to accomplish the aims of the foreign corporation and there is no evidence of separate interests. Id. at 855. Evidence of operational control is not satisfied where the foreign corporation's policy statements merely establish goals for its subsidiaries and

7

where the subsidiaries operate with a "high degree of autonomy." Id. at 856. Jurisdiction over the foreign corporation will not be exercised based on the subsidiary's local activities where the subsidiary carries on its own business and preserves some independence from the foreign corporation. Consolidated Dev. Corp., 216 F.3d at 1293. A foreign corporation will be held subject to personal jurisdiction, however, if the subsidiary is a "mere instrumentality." Meier, 188 F.3d at 1273.

Once the plaintiff has demonstrated that the defendant has met at least one of the jurisdictional criteria of the Florida long-arm statute, a court must determine whether the defendant possesses sufficient minimum contacts with the state and whether maintenance of the suit will "offend 'traditional notions of fair play and substantial justice.'" Walt Disney Co., 677 So. 2d at 402 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945) (internal citation omitted)). After a plaintiff has established a prima facie case for jurisdiction and the defendant has filed affidavits contesting jurisdiction, the plaintiff bears the burden of proving sufficient jurisdiction by affidavits or other sworn statements. Id. at 402-03.

Accepting Abramson's factual allegations as true, Abramson claimed that WDC, a foreign corporation, was conducting business in Florida through the

operations of its subsidiaries, WDW and HRC. This allegation was sufficient to state a <u>prima</u> <u>facie</u> case of jurisdiction under Florida's long-arm statute. This allegation was, however, directly and completely contradicted by the affidavit of WDC's Senior Vice President – Eastern Regional Counsel and Assistant Secretary Kenneth E. Newman. In his affidavit, Newman explained that WDC neither did business in Florida nor had an agent in Florida. He stated that WDC neither owns or operates WDW and HRC, which are both wholly owned subsidiaries of WDC subsidiary Disney Enterprises, Inc. ("DEI"). He established that WDW and HRC were each responsible for their own day-to-day activities and finances, maintained separate books, records, and accounts from WDC, and were not authorized to act as an agent for WDC. Newman's allegation was sufficient to shift the burden back to Abramson to produce sworn testimony in support of jurisdiction. Abramson's attorney's sworn affidavit presented quotations from WDC's CEO in support of jurisdiction. The affidavit, however, did not counter Newman's explanation of the business practices of WDC, WDW, or HRC, and does not contradict the absence of contact or separate business entities between WDC, WDW, and HRC.[2] Absent competent evidence to contradict Newman's affidavit, the district court did not

[2] Despite WDC Chairman's claim of "interdependence," Newman's affidavit makes clear that WDW and HRC operate autonomously, even if those autonomous operations are based on film ideas produced and owned by WDC.

abuse its discretion by not holding an evidentiary hearing. Based on the uncontested facts contained in Newman's affidavit, there is no indication that WDC does business in Florida or has an agency relationship with WDW or HRC. Further, the minimum contacts requirement is not satisfied directly by WDC or indirectly through WDW or HRC. The district court did not abuse its discretion in not permitting discovery or holding an evidentiary hearing, and did not err in declining to exercise jurisdiction over WDC.[3]

## III. CONCLUSION

For the reasons stated above, the district court's order granting WDC's motion to dismiss for lack of personal jurisdiction is

**AFFIRMED**.

---

[3] The Abramsons requested discovery while the case was pending in the Eastern District of New York. R2-12 at 15-16. In the memorandum opinion transferring the case to the Middle District of Florida, the district judge held that they had "failed to persuade" the court that they were entitled to jurisdictional discovery, relying on "wide-ranging requests for material of dubious relevance" instead of "specific, relevant demands." R3-25 at 8. The Abramsons did not renew this request in the Middle District of Florida.