925 So.2d 1156 (2006)
DEVELOPMENT CORP. OF PALM BEACH, Appellant,
v.
WBC CONSTRUCTION, L.L.C., Willard Brothers Construction, Inc. and Building Materials Holding Corporation, Inc., Appellees.
No. 4D05-293.
District Court of Appeal of Florida, Fourth District.
April 26, 2006.
*1158 Spencer M. Sax of Sachs Sax Klein, Boca Raton, and Robert Rivas of Sachs Sax Klein, Tallahassee, for appellant.
Rodolfo Sorondo, Jr. and Ilene L. Pabian of Holland & Knight LLP, Miami, for appellee Building Materials Holding Corporation, Inc.
WARNER, J.
Development Corp. of Palm Beach ("Development") appeals an order of the trial court dismissing its complaint filed against Building Materials Holding Corporation ("BMHC") for lack of personal jurisdiction over BMHC. We affirm because BMHC was not subject to jurisdiction under section 48.193, Florida Statutes.
Development brought suit against Willard Brothers Construction, Inc. ("Willard Brothers"), WBC Construction, LLC ("WBC"), and BMHC for damages for breach of contract entered into by Willard Brothers in 2000 and modified in 2003 to construct shells of residential homes for Development. Although its agreements were with Willard Brothers, which later became WBC, Development also sued BMHC alleging that BMHC was the parent company of WBC and the cause of action arose from the activities of a joint venture between WBC, Willard Brothers, and BMHC.
BMHC moved to dismiss the complaint for lack of personal jurisdiction. It attached affidavits from its chief administrative officer, stating that it conducted no business activities in Florida, that it was not a member or manager of WBC, and that it was not a party to a joint venture with WBC. It denied that it had a contractual relationship with Development or that it was involved with any of the activities that gave rise to the alleged tortious conduct in the complaint.
Development filed counter-affidavits of one of its officers, stating his understanding that BMHC was engaged in a joint venture with WBC and Willard Brothers. He further stated that BMHC controls and is responsible for WBC and Willard Brothers. Attached to the affidavit were press releases from BMHC which included language describing the relationship between Willard Brothers and BMHC as a joint venture. It also filed an affidavit of Danny Willard, who testified in a deposition that Willard Brothers "merged with a partner, which is BMHC." BMHC then filed an affidavit of Bruce Willard which refuted his brother's statement, attesting that *1159 WBC was not a merger or joint venture with BMHC.
After a review of the motion and affidavits, the trial court concluded that the affidavits could not be reconciled and conducted a limited evidentiary hearing pursuant to Venetian Salami Company v. Parthenais, 554 So.2d 499 (Fla.1989), to determine whether BMHC had the requisite minimum contacts with Florida to be subjected to its jurisdiction.
At the hearing, the following facts revealed the connection between BMHC and WBC. BMHC is a publicly-traded holding company that invests in the residential construction industry through its operating subsidiaries. It is headquartered in California and incorporated under the laws of Delaware. BMHC has two wholly owned subsidiaries that conduct its business operations, one of which is BMC Construction, Inc. ("BMC").
Willard Brothers is a Florida corporation, owned by Bruce and Danny Willard, and formed in 1990. It is in the business of shell construction, which refers to the business of building the structural portions of new homes. In 2002, BMHC, through BMC, sought to purchase the assets of Willard Brothers. In order to accomplish the sale, Bruce and Danny formed a company called WBC Construction, a limited liability company incorporated in Delaware. The assets of Willard Brothers were then transferred to WBC. Willard Brothers retained a 98% share of WBC, with the brothers owning the remaining 2%.
In January 2003, Willard Brothers, WBC, Bruce, Danny, BMHC, and BMC entered into a securities purchase agreement. Pursuant to the agreement, BMC purchased sixty percent of WBC, leaving Willard Brothers with 38% and the brothers owning 2%. BMHC has no direct ownership interest in WBC. BMHC is referred to in the securities purchase agreement because it issued shares of its stock to Willard Brothers as part of the purchase price for BMC's 60% interest.
Concurrent with the sale, an operating agreement was entered which provided that the ordinary and usual decisions concerning WBC would be made by its managing member, Willard Brothers, through Bruce Willard. Among other powers, the managing member has the authority to hire and fire employees and consultants, to execute leases and contracts in the ordinary course of business, to maintain bank accounts, and to bring and defend actions and proceedings before any court. The managing member also participates in a management committee which oversees the company. The members of the management committee are Bruce and Danny Willard; Mike Mahre, the CEO of BMC, who is also a senior vice-president at BMHC; and Randy Shipp, who is the Chief Operating Officer of BMC.
However, there are some limitations on the authority of Willard Brothers as the managing member. Certain expenditures must have the approval of BMC as well as BMHC. BMHC must approve any purchase or sale of an asset in excess of $25,000. Further WBC must receive BMHC's permission to buy or sell automobiles or real estate.
BMHC audits WBC on an annual basis, and WBC's profits and losses are reported in a consolidated financial statement of all BMHC-held entities. BMHC processes WBC's payroll through a national payroll service in Idaho. Bruce Willard acknowledged that he reports each month on significant accounts to BMC. He reports to Mike Mahre, who is not only CEO of BMC, but also a senior vice-president of BMHC.
BMHC presented its relationship with WBC as a joint venture in press releases and on its website. The website repeatedly *1160 referred to a joint venture with Willard Brothers through WBC. Furthermore, in BMHC's Form 10-K filing with the SEC, it stated that WBC was managed by BMHC and referred at one place to WBC as being integrated into BMHC and in another as being consolidated with BMHC. Additionally, under the headline "BMHC Launches Florida Operations Through New Construction Services Joint Venture," BMHC's website included an article describing a joint venture with WBC through its subsidiary BMC.
The corporate attorney of BMHC who testified at the hearing stated that the press releases and website material were written by its investor relations firm and were meant to be responsive to the SEC requirement that firms use "plain English" for investors. It was not meant to characterize their legal relationship, which is defined in the securities purchase agreement and operating agreement.
After hearing the evidence, the court granted the motion to dismiss finding that BMHC did not have minimum contacts with the State of Florida. Development appeals this order.
Generally, a trial court's ruling on a motion to dismiss for lack of personal jurisdiction is reviewed de novo. Wendt v. Horowitz, 822 So.2d 1252, 1256-57 (Fla. 2002). However, where "the trial court's decision is based on live testimony, the appellate court defers to the trial court's determination as to the credibility of witnesses." Evans v. Thornton, 898 So.2d 151, 152 (Fla. 4th DCA 2005). Thus, with respect to the determination of facts, we defer to the trial court. With respect to the application of those facts to the law, we review de novo.
Section 48.193, Florida Statutes, is the long-arm statute of this state and provides, in relevant part:
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:
(a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
....
(2) A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.
In Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989), the court explained the procedure to determine whether personal jurisdiction exists. Initially, the plaintiff must allege facts in its complaint showing the basis of the court's jurisdiction. When a defendant challenges jurisdiction, the defendant files a motion to dismiss. If the motion alone is filed, then the defendant merely raises the legal sufficiency of the pleadings. When, however, the defendant files affidavits contesting the factual assertions of jurisdiction or the existence of minimum contacts, the burden then shifts to the plaintiff to file counter-affidavits supporting its position. If those affidavits conflict, then it is incumbent on the trial court to hold a hearing to resolve the conflicts in the evidence and determine the jurisdictional issue. Id. Thus, an evidentiary hearing under Venetian Salami resolves the factual disputes necessary to determine jurisdiction pursuant to section 48.193 as well as whether minimum contacts exist to satisfy due process concerns.
*1161 Here, the complaint alleged sufficient facts to show personal jurisdiction under either section 48.193(1)(a) or (2). It alleged that the defendant conducted business in the state through a joint venture relationship with WBC, and those same allegations would also sustain jurisdiction pursuant to section 48.193(2) as they would show that the defendant conducted substantial business activity within the state. The affidavits filed by BMHC and Development show a dispute as to the relationships and the contacts with Florida. Therefore, the court was required to resolve the factual issues at a hearing.
In order to establish a joint venture, the following elements must be proven: (1) a community of interest in the performance of a common purpose, (2) joint control or right of control, (3) a joint proprietary interest in the subject matter, (4) a right to share in the profits, and (5) a duty to share in any losses that may be sustained. Kislak v. Kreedian, 95 So.2d 510, 515 (Fla.1957). Under Florida law, members of a joint venture fall within the ambit of the long-arm statute where the causes of action arise out of the joint venture's business activities to be performed in the forum state. See Sutton v. Smith, 603 So.2d 693, 698-99 (Fla. 1st DCA 1992).
We agree with BMHC that all of the elements of a joint venture were not proven. Nevertheless, that does not end the inquiry, as the type of business relationship actually existing could still result in subjecting BMHC to jurisdiction pursuant to an agency theory under section 48.193(1)(a). Here, the relationship was a parent/subsidiary arrangement, or even a sub-subsidiary, because BMC was the actual stockholder of WBC, and BMC was a wholly owned subsidiary of BMHC.
While a parent corporation is not subject to jurisdiction in Florida solely because its subsidiary does business here, see Qualley v. International Air Service Co., Ltd., 595 So.2d 194, 196 (Fla. 3d DCA 1992), the control of a parent over a subsidiary may permit the conclusion that the subsidiary is acting as the agent of the parent, thus subjecting the parent to jurisdiction under section 48.193(1) and supporting "minimum contacts."
The level of control must be very high, however. In Enic, PLC v. F.F. South & Co., Inc., 870 So.2d 888 (Fla. 5th DCA 2004), a plaintiff sought to obtain jurisdiction over the foreign parent corporation of a local subsidiary for misrepresentations connected with the sale of its business. The foreign parent moved to dismiss for lack of jurisdiction. The court examined whether the subsidiary could be said to be the agent of the parent so as to subject it to jurisdiction under section 48.193(1)(a). The court explained:
It is well settled in Florida that the mere presence of a subsidiary in Florida, without more, does not subject a non-Florida corporate parent to long-arm jurisdiction. See, e.g., Walt Disney Co. v. Nelson, 677 So.2d 400, 403 (Fla. 5th DCA 1996); Qualley v. International Air Service Co., 595 So.2d 194, 196 (Fla. 3d DCA 1992), cause dismissed, 605 So.2d 1265 (Fla.1992). However, when a parent exercises sufficient control over a subsidiary, that control establishes an agency and supports jurisdiction. E.g., State v. American Tobacco Co., 707 So.2d 851, 854-55 (Fla. 4th DCA 1998); see also Bell Atlantic Corp. v. Associated Data Consultants, Inc., 714 So.2d 523 (Fla. 4th DCA 1998). The amount of control exercised by the parent must be high and very significant. American Tobacco, 707 So.2d at 851 (Fla. 4th DCA 1998). "[T]he parent corporation, to be liable for its subsidiary's acts under the ... agency theory, must exercise control to the extent the subsidiary `manifests no separate corporate interests of its own *1162 and functions solely to achieve the purposes of the dominant corporation.'" Id. (quoting Vantage View, Inc. v. Bali East Development Corp., 421 So.2d 728 (Fla. 4th DCA 1982) modified on other grounds by Dania Jai-Alai Palace v. Sykes, 450 So.2d [1114] at 1114 (Fla. 1984)).
The instant case is analogous to Kramer Motors, Inc. v. British Leyland, Ltd., 628 F.2d 1175 (9th Cir.) cert. denied, 449 U.S. 1062, 101 S.Ct. 785, 66 L.Ed.2d 604 (1980). In Kramer Motors, the court found that there was insufficient control by the parent over the subsidiary despite: 1) some of the directors of the parent were members of the board of the subsidiary; 2) the president of the subsidiary served as a director of the parent; 3) the parent had a general executive responsibility for the subsidiary's operation and reviewed and approved the major policy decisions of the subsidiary; 4) the parent guaranteed obligations of the subsidiary to United States banks; 5) executives of the parent worked closely with executives of the subsidiary on pricing and products and sometimes traveled to the United States for meetings; 6) the parent approved the subsidiary's proposal to consolidate product distribution; and 7) the parent established goals and gave directives to the subsidiary. Id. at 1177. Despite the amount of involvement in Kramer Motors of the parent over the subsidiary, the court found that such contact was insufficient to establish an agency because no evidence was shown that the parent controlled the internal day-to-day affairs of the subsidiary. All goals and directives of the parent were "normal" and did not show "operational control" of the subsidiary by the parent necessary to establish personal jurisdiction. See also General Cigar Holdings, Inc. v. Altadis, S.A., 205 F.Supp.2d 1335 (S.D.Fla.), aff'd, 54 Fed.Appx. 492 (11th Cir.2002), (finding no personal jurisdiction over a parent with a Florida subsidiary where despite "regular and extensive contact" and a "very close working relationship" between the parent and the subsidiary, there was no evidence that the parent controlled the subsidiary's daily "basic operation").
Id. at 891-92. The court determined that Enic did not exercise that kind of control over its subsidiary and thus determined that jurisdiction over Enic did not exist.
When we compare the control of BMHC over WBC, it is significantly less than what was determined insufficient in Enic or in Kramer. BMHC did not control the daily operations of WBC. The "operational control" necessary to subject the parent to jurisdiction under the agency theory of section 48.193(1) is not present. See also Walt Disney Co. v. Nelson, 677 So.2d 400 (Fla. 5th DCA 1996). Therefore, BMHC was not subject to Florida jurisdiction pursuant to section 48.193(1).
Jurisdiction over BMHC is also not present under the "substantial business activity" provisions of section 48.193(2). BMHC does not maintain any offices in the state and does no business itself in the state. Only by attributing the activities of BMC and WBC to BMHC can any assertion of contact with Florida exist. We have already determined that BMHC does not exert sufficient control over WBC to justify jurisdiction under an agency theory, and it was not in a joint venture with WBC. Therefore, the activities of WBC cannot provide personal jurisdiction over BMHC.
This case is unlike Nichols and NTS v. Paulucci, 652 So.2d 389 (Fla. 5th DCA 1995), cited by Development. There, the court found that jurisdiction could be exercised over NTS, a corporation which was not actually a parent of another corporation involved in a Florida joint venture, but *1163 which had extensive contacts and control over the companies in the joint venture. In that case, the control of the company and the intertwining of the operational activities was far more extensive than is present in this case. NTS paid routine expenses for the joint venture partners, performed the accounting of expenses and invoicing for the venture, incurred expenses on behalf of the joint venture, provided its architect and decorator to the joint venture for work in Florida, and guaranteed a $13 million loan for the joint venture. Because of its extensive contacts, the court affirmed the trial court's determination that NTS itself had engaged in "substantial and not isolated activity within this state...." See § 48.193(2), Fla. Stat.
As to the representations made by BMHC on its website regarding the joint venture with WBC, the court heard the evidence that these were not meant to state the legal relationship between the parties but to state in terms investors might understand the complicated arrangements between the parent, subsidiaries, and sub-subsidiaries. The court obviously gave credence to this testimony. Development did not allege that it relied on these representations in entering into the contract. In fact, the original contract was entered into with Willard Brothers, long before the securities purchase agreement between WBC and BMC existed. Under these circumstances, the trial court could have discounted the importance of these representations in determining jurisdiction in this case.
For these reasons, we affirm the order of the trial court.
KLEIN and HAZOURI, JJ., concur.