949 So.2d 1143 (2007)
Rafeal GADEA, Appellant,
v.
STAR CRUISES, LTD., et al., Appellee.
No. 3D05-2300.
District Court of Appeal of Florida, Third District.
February 28, 2007.
*1145 Ralph O. Anderson, Davie; Downs Brill Whitehead & Sage, Pembroke Pines, for appellant.
Mase & Lara and Curtis Mase and Beverly D. Eisenstadt, Miami, for appellee, Star Cruises, Ltd.
Before WELLS, CORTIÑAS, and ROTHENBERG, JJ.
WELLS, Judge.
Rafael Gadea, appeals from an order granting with prejudice Star Cruises, Ltd.'s motion to dismiss for lack of personal jurisdiction. Because Gadea has failed to demonstrate jurisdiction over Star under either section 48.193(1) or 48.193(2) of the Florida Statutes, we affirm.
In March 2004, Gadea, an employee of Seaking, Inc. ("Seaking"), was allegedly injured while working on the M/V Superstar Leo. At the time, the vessel was owned and operated by Star and was located in international waters off the coast of China. Gadea was working on the vessel under a contract between Seaking and NCL (Bahamas), Ltd. ("NCL"), a Star subsidiary,[1] which planned to acquire ownership of the vessel from Star for use in the American market.
Gadea sued Seaking, NCL, and Star claiming, as to Star, unseaworthiness and general maritime negligence. Jurisdiction over Star was asserted under sections 48.193(1) and 48.193(2) of the Florida Statutes. The court below, finding no basis for jurisdiction under either provision, dismissed the action. We agree with this assessment.

General Jurisdiction under Section 48.193(2) of the Florida Statutes
Section 48.193(2) of the Florida Statutes provides that "[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity." An assertion of general jurisdiction under this provision requires a "showing of `continuous and systematic general business contacts'" with this state. Carib-USA Ship Lines Bahamas Ltd. v. Dorsett, 935 So.2d 1272, 1275 (Fla. 4th DCA 2006) (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)); Philip J. Padovano, Florida Civil Practice § 8.7 (2007 ed.) (stating that "[t]he phrase `substantial and not isolated activity' in section 48.193(2) refers to a `continuous and systematic general business contact' with the state").
Gadea cites to the following "contacts with Florida" as demonstrating that Star "engaged in substantial and not isolated activity" in this state:
1) Star's acquisition of NCL, an entity doing substantial business in Florida;
2) Star's installation of NCL's top management upon acquiring NCL;
3) Star's press releases and other public announcements representing NCL as an extension of Star and a critical component of Star's global cruise line strategy;

*1146 4) Star's use of NCL's Miami headquarters as a booking agent for Star cruises; and
5) Star's advertisement of its cruises in NCL's brochures and its listing of NCL's reservation number as a contact number for booking Star Cruises.
None of these contacts, taken individually or as a whole, constitutes substantial activity within this state on Star's part to satisfy section 48.193(2) requirements.
There is no evidence in the record before us that Star itself engaged in business activities in this state.[2] And the presence of NCL in Florida, without more, could not subject Star to the court's general jurisdiction. As this court in Qualley v. International Air Service Co., 595 So.2d 194, 196 (Fla. 3d DCA 1992), confirmed, the "presence of a subsidiary corporation within Florida is not enough, without more, to subject a non-Florida parent corporation to long-arm jurisdiction within this state."
Nor can NCL's activity in Florida form the basis for a finding of general jurisdiction over Star. A substantial body of Florida law makes clear that it is only where a parent corporation exerts such extensive operational control over a subsidiary that the subsidiary is no more than an agent existing to serve only the parent's needs, that jurisdiction over the parent exists. Sharing some officers and directors, having a unified or "global" strategy and goals, cross-selling in promotional materials, and performing services for one another is not sufficient to satisfy this test:
In Enic, PLC v. F.F. South & Co., Inc., 870 So.2d 888 (Fla. 5th DCA 2004), a plaintiff sought to obtain jurisdiction over the foreign parent corporation of a local subsidiary for misrepresentations connected with the sale of its business. The foreign parent moved to dismiss for lack of jurisdiction. The court examined whether the subsidiary could be said to be the agent of the parent so as to subject it to jurisdiction under section 48.193(1)(a). The court explained:
It is well settled in Florida that the mere presence of a subsidiary in Florida, without more, does not subject a non-Florida corporate parent to long-arm jurisdiction. See, e.g., Walt Disney Co. v. Nelson, 677 So.2d 400, 403 (Fla. 5th DCA 1996); Qualley v. International Air Service Co., 595 So.2d 194, 196 (Fla. 3d DCA 1992), cause dismissed, 605 So.2d 1265 (Fla.1992). However, when a parent exercises sufficient *1147 control over a subsidiary, that control establishes an agency and supports jurisdiction. E.g., State v. American Tobacco Co., 707 So.2d 851, 854-55 (Fla. 4th DCA 1998); see also Bell Atlantic Corp. v. Associated Data Consultants, Inc., 714 So.2d 523 (Fla. 4th DCA 1998). The amount of control exercised by the parent must be high and very significant. American Tobacco, 707 So.2d at 851 (Fla. 4th DCA 1998).
. . .
The instant case is analogous to Kramer Motors, Inc. v. British Leyland, Ltd., 628 F.2d 1175 (9th Cir.) cert. denied, 449 U.S. 1062, 101 S.Ct. 785, 66 L.Ed.2d 604 (1980). In Kramer Motors, the court found that there was insufficient control by the parent over the subsidiary despite: 1) some of the directors of the parent were members of the board of the subsidiary; 2) the president of the subsidiary served as a director of the parent; 3) the parent had a general executive responsibility for the subsidiary's operation and reviewed and approved the major policy decisions of the subsidiary; 4) the parent guaranteed obligations of the subsidiary to United States banks; 5) executives of the parent worked closely with executives of the subsidiary on pricing and products and sometimes traveled to the United States for meetings; 6) the parent approved the subsidiary's proposal to consolidate product distribution; and 7) the parent established goals and gave directives to the subsidiary. Id. at 1177. Despite the amount of involvement in Kramer Motors, of the parent over the subsidiary, the court found that such contact was insufficient to establish an agency because no evidence was shown that the parent controlled the internal day-to-day affairs of the subsidiary. All goals and directives of the parent were "normal" and did not show "operational control" of the subsidiary by the parent necessary to establish personal jurisdiction. See also General Cigar Holdings, Inc. v. Altadis, S.A., 205 F.Supp.2d 1335 (S.D.Fla.), aff'd, 54 Fed.Appx. 492 (11th Cir.2002), (finding no personal jurisdiction over a parent with a Florida subsidiary where despite "regular and extensive contact" and a "very close working relationship" between the parent and the subsidiary, there was no evidence that the parent controlled the subsidiary's daily "basic operation").

Id. at 891-92. The court determined that Enic did not exercise that kind of control over its subsidiary and thus determined that jurisdiction over Enic did not exist.
Dev. Corp. of Palm Beach v. WBC Const., L.L.C., 925 So.2d 1156, 1161-62 (Fla. 4th DCA 2006)(concluding that a foreign parent corporation which shared at least one officer with its subsidiary; which had authority to approve some expenditures of its subsidiary; which had to approve the purchase or sale by its subsidiary of any asset valued in excess of $25,000; which had to approve the purchase of vehicles by its subsidiary; which audited its subsidiary on an annual basis and reported the subsidiary's profits and losses on a consolidated financial statement; which processed its subsidiary's payroll; and which represented its relationship with its subsidiary as a "joint venture," stating in a website article that it was acting through a subsidiary, was not engaged in substantial business activity in this state within the meaning of section 48.193(2) because the parent did "not exert sufficient control over [the subsidiary] to justify jurisdiction"); see Faro Techs., Inc. v. Cimcore Corp., 2006 WL *1148 1119223 (M.D.Fla. Apr.27, 2006) (rejecting a claim that a Delaware parent corporation with two Florida subsidiaries was doing business in this state where the parent existed solely to hold stock in the subsidiaries; the parent and subsidiaries shared common officers and at least one director; the chief financial officer of both subsidiaries, with the assistance of subsidiary employees, prepared the parent's tax returns because the parent had no employees of its own; one subsidiary paid for work performed for the parent by subsidiary employees; and one subsidiary provided office space for the parent, rent free); State v. American Tobacco Co., 707 So.2d 851, 856 (Fla. 4th DCA 1998)(confirming that statements which establish goals for subsidiaries "are normal for a sole shareholder to give its subsidiary" and "[do] not show the operational control of the subsidiary which is necessary to establish personal jurisdiction"); see also Abramson v. Walt Disney Co., 132 Fed.Appx. 273, 276-77 n. 2 (11th Cir.2005)(concluding that a foreign parent corporation did not conduct business in Florida so as to subject it to jurisdiction under section 48.193(2) even though the chairman of the foreign parent's board of directors had stated in internet articles and letters to shareholders that he was directly involved in operations in Florida and that all of the parent-related enterprises were in the business of maximizing profits for the parent through their "interdependence"); Camp Illahee Investors, Inc. v. Blackman, 870 So.2d 80, 85 (Fla. 2d DCA 2003)(concluding that week-long annual visits to Florida by the owner/operator of a nonresident corporation for promotional purposes did not constitute substantial and not isolated activity within the forum state); Pfundstein v. Omnicom Group Inc., 285 N.J.Super. 245, 666 A.2d 1013, 1015-17 (1995) (holding that jurisdiction could not be asserted over the parent merely because the subsidiary had placed advertisements for the parent's products in New Jersey).
Rather, it is where a subsidiary manifests no separate interests of its own, but in effect functions only as an agent to achieve the purposes of the parent corporation, that general jurisdiction over the foreign parent will be determined to exist. See Universal Caribbean Establishment v. Bard, 543 So.2d 447 (Fla. 4th DCA 1989)(affirming denial of a foreign parent corporation's motion to dismiss because the Florida subsidiary advertised itself as the agent for its "own hotel" which was owned by the foreign parent and because the sole function of the Florida subsidiary was to act as a tour operator for the parent's Antigua resort); see also Meier ex rel. Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1268-76 (11th Cir.2002)(finding long-arm jurisdiction under section 48.193(2) where two Florida subsidiaries existed solely to serve a Bahamian hotel and other resorts owned by a parent corporation by soliciting and coordinating reservations and all advertising and marketing; by purchasing all United States goods and providing all day-to-day accounting services, including collection services, for the parent owned hotel; by sharing bank accounts with the parent and invoicing themselves and writing checks for their services from those accounts); cf. Abramson, 132 Fed.Appx. at 276 (noting that "[j]urisdiction over the foreign corporation will not be exercised based on the subsidiary's local activities where the subsidiary carries on its own business and preserves some independence from the foreign corporation").
There is no evidence that NCL exists solely to serve its foreign parent. NCL has its own fleet of cruise ships which it operates. Thus, although NCL shares some officers and directors with Star, shares a common strategy, advertises Star *1149 cruises in its brochures, and takes bookings and payment for Star cruises, it cannot be said that NCL exists solely to serve Star. Instead, this case is more akin to those cases where jurisdiction over a foreign parent has been rejected because the subsidiary, while providing some services to the parent, and in some instances sharing goals and officers and directors, is sufficiently independent to act in its own, as well as in the parent's, interests. See Kramer Motors, 628 F.2d at 1177; Faro Technologies, 2006 WL 1119223 at *6; WBC, 925 So.2d at 1162; Enic, 870 So.2d at 892; Nelson, 677 So.2d at 403; Qualley, 595 So.2d at 196.
The undisputed facts are that Star is a Hong Kong company that has no offices, no agents, and no employees in Florida. Although it does have a Florida subsidiary which it owns though a number of intermediary subsidiaries, it does not exercise the level of control over that subsidiary, which does substantial business of its own, to subject Star to jurisdiction in this state under section 48.193(2).

Specific Jurisdiction under Section 48.193(1) of the Florida Statutes
Gadea claims that Star is also subject to personal jurisdiction in Florida under section 48.193(1)(a)[3] which "confers jurisdiction over parties who operate, conduct, engage in, or carry on a business or business venture in this state or have an office or agency in this state for any cause of action arising from the `doing of those acts." Resource Healthcare of Am., Inc. v. McKinney, 940 So.2d 1139, 1143 (Fla. 2d DCA 2006)(emphasis added). According to Gadea, NCL was acting for itself and for Star when it contracted with his Florida-based employer and that because his injuries "arise from" that business activity, specific jurisdiction over Star has been demonstrated. We disagree.
As detailed above, there is no support for Gadea's claim that NCL functioned as Star's agent either regarding this contract or otherwise. See WBC, 925 So.2d at 1161-62 ("[T]he parent corporation, to be liable for its subsidiary's acts under the . . . agency theory, must exercise control to the extent the subsidiary `manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation.'") (citations omitted). Star is not, therefore, subject to jurisdiction in this state because its subsidiary does business here and because that subsidiary contracted with a Florida company for work to be performed abroad.
Gadea's reliance on Ship Construction & Funding Services (USA), Inc., 174 F.Supp.2d at 1320, where a nexus was found to exist in the breach of contract action between Star and the Florida-based broker with whom Star had directly contracted to acquire a Florida-based corporation, is misplaced. Here, there is no nexus between Gadea's personal injury claims and any contract or business activities between Star and any Florida entity. "Although the term `arising from' does not mean proximately caused by, it does require direct affiliation, nexus, or substantial connection to exist between the basis for the plaintiffs' cause of action and the *1150 defendants' business activity in the state. Citicorp Ins. Brokers (Marine), Ltd. v. Charman, 635 So.2d 79 (Fla. 1st DCA 1994); see also Christus [St. Joseph's Health Systems v. Witt Biomedical Corp., 805 So.2d 1050, 1052 (Fla. 5th DCA 2002)]; deMco Techs., Inc. v. C.S. Engineered Castings, Inc., 769 So.2d 1128 (Fla. 3d DCA 2000)." Nw. Aircraft Capital Corp. v. Stewart, 842 So.2d 190, 194 (Fla. 5th DCA 2003). No such direct affiliation, nexus, or substantial connection exists here.
Simply stated this claim arises from a personal injury that occurred in China, not Florida and has no connection to, that is, it did not arise out of, Star's agreement to transfer ownership of one of its vessels to NCL. See Gerber Trade Fin. Inc. v. Bayou Dock Seafood Co., 917 So.2d 964, 967 (Fla. 3d DCA 2005)(stating that "for specific jurisdiction, the plaintiff [must] . . . show that the defendant's contact within the State resulted in, among several other options, a tortious act").
Thus, on this record, it is clear that as to either a claim of general or specific jurisdiction, the requirements of section 48.193 have not been met. Because the long-arm statute must be strictly construed, and any doubts about applicability of the statute resolved in favor of the defendant and against a conclusion that personal jurisdiction exists, the order under review must be affirmed. See Seabra v. Int'l Specialty Imp., Inc., 869 So.2d 732, 733 (Fla. 4th DCA 2004) (noting that "courts are required to strictly construe the long-arm statute").
Affirmed.
NOTES
[1] The relationship between NCL and Star is as follows:

Star owns → NCL, Corporation, Ltd. (Bermuda) owns → Arrasas Ltd. (Isle of Man) owns → NCL International, Ltd. (Bermuda) owns → defendant NCL (Bermuda).
[2] Moreover, the record does not establish that Star acquired NCL in Florida. The only evidence regarding Star's acquisition of NCL and its presence here comes from an affidavit originally filed in a federal suit brought by a Florida brokerage company to obtain a fee for allegedly brokering a joint venture between Star and Carnival Corporation, a joint venture which allegedly resulted in Star's acquisition of NCL. See Ship Constr. & Funding Servs. (USA), Inc. v. Star Cruises PLC, 174 F.Supp.2d 1320 (S.D.Fla.2001). That affidavit avers that Star representatives came to Florida twice in the 1990's, once in an attempt to negotiate charters for a related joint venture agreement with Florida-based Carnival Corporation, and once to inspect a Carnival vessel in Tampa, Florida. Neither visit resulted in Star doing any business in this state. Although during one of these visits Star and Carnival representatives discussed "their respective thoughts concerning NCL," they came to no agreement regarding acquisition of NCL. In fact, the press releases attached to the affidavit confirm that after this discussion, Star and Carnival engaged in a "battle" to take control of NCL with Star finally prevailing. Although Star ultimately acquired NCL, neither the affidavit nor the press releases attached to it detail where negotiations for that acquisition, or the acquisition itself, took place. In fact, the press releases suggest that it did not take place in Florida but elsewhere as Star gobbled up the stock in NCL's parent company from shareholders around the world.
[3] Section 48.193(1)(a) provides:

(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts: (a) Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.