**ADELL CORPORATION, Plaintiff,**

v.

**ELCO TEXTRON, INC., Defendant.**

No. 3:98–CV–2384–T.

United States District Court,
N.D. Texas,
Dallas Division.

March 31, 1999.

Kenneth Rudolph Matticks, John S. Torkelson, Timmons & Kelly, Dallas, TX, for Adell Corporation.

Joelle C. Luedtke, Linda S. Resh, Kirkland & Ellis, Chicago, IL, Keith Robert Verges, Figari & Davenport, Dallas, TX, for Dura Operating Corp.

Joelle C. Luedtke, Linda S. Resh, Kirkland & Ellis, Chicago, IL, Marianne Corr, Providence, RI, for Elco Textron.

## ORDER GRANTING MOTION TO DISMISS AND DECLARING MOOT MOTION TO TRANSFER

MALONEY, District Judge.

Before the Court is Defendant's Motion to Dismiss or, in the Alternative, to Transfer. The motion is opposed. After considering the motion, the response, and the reply, the Court is of the opinion that the motion to dismiss should be granted and the motion to transfer should be declared moot.

This is a patent infringement case. Plaintiff Adell Corporation is the assignee of U.S. Patent No. 5,638,711 (the '711 patent), issued on June 17, 1997. The '711 patent is for a locking device on spare tires that are stored under the beds of certain pickup trucks. In its amended complaint, Adell alleges that Defendant Elco Textron manufactures and sells a spare tire locking device in Texas that infringes the '711 patent.

Elco is a Delaware corporation with its principal place of business in Rockford, Illinois. The affidavits filed in this action show that Elco manufactures small metal and plastic parts for the automotive and commercial equipment manufacturing industries. Through its Detroit, Michigan sales office, Elco agreed to develop components for General Motors for use in its spare tire theft deterrent system on its GM 800(C/K) pickup trucks. All of Elco's contacts with General Motors relating to the design and development of the component parts were through Elco's Detroit sales office. The component parts are manufactured and assembled in Indiana by an Elco subsidiary.

Until September 6, 1998, Elco shipped the parts to another company who repackaged them and sent them to General Motors. Beginning on September 6, 1998, however, Elco started shipping the parts directly to General Motors locations in Pontiac, Michigan, Fort Wayne, Indiana, and Oshawa, Canada. General Motors uses the components from Elco and components from others to make its spare tire devices on many of its pickup trucks.

With the instant motion, Elco seeks to dismiss the action for lack of personal jurisdiction or improper venue, or in the alternative, to transfer the action to the Eastern District of Michigan.

■ The Texas long-arm statute authorizes personal jurisdiction over non-residents when their actions constitute "doing business" in the state. TEX.CIV.PRAC. & REM.CODE ANN. §§ 17.042–043. The Texas long-arm statute extends jurisdiction to the limits of the Due Process Clause of the United States Constitution. *See Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). Therefore, in determining whether the court may exercise jurisdiction, the only inquiry is whether exercise of jurisdiction over the nonresident defendant would offend due process. *See Gundle Lining Const. Corp. v. Adams Cty. Asphalt, Inc.,* 85 F.3d 201, 204 (5th Cir. 1996); *3D Systems, Inc. v. Aarotech Lab., Inc.,* 160 F.3d 1373, 1377 (Fed.Cir.1998).

■ Due process requires that a two-prong test must be met before assertion of jurisdiction is proper. *See International Shoe v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945). First, the plaintiff must show that the defendant has minimum contacts with the forum state. *See id.* Second, the plaintiff must show that exercising personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice. *See id.*

■ Due process requires a court to determine whether the nonresident defendant has, through its actions, purposefully

availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of the forum state's law. *See Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The defendant's conduct and connection with the forum state must be such that the defendant should reasonably anticipate being haled into court in the forum state. *See id.*

In *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297–98, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), the Supreme Court stated that a "forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." Later, a divided Court addressed the requirements of the stream of commerce theory. In *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), four Justices, led by Justice O'Connor, stated that to be subject to personal jurisdiction, a defendant must do more than simply place a product in the stream of commerce. *See id.* at 112, 107 S.Ct. 1026. However, Justice Brennan and three other Justices believed that a defendant who places goods in the stream of commerce benefits from the forum state so that the inquiry into any additional conduct by the defendant is unnecessary. *See id.* at 117, 107 S.Ct. 1026 (Brennan, White, Marshall, & Blackmun, JJ., concurring in part and concurring in the judgment). Despite Adell's claim to the contrary, Justice Stevens did not express his opinion on what is required under the stream of commerce theory. Accordingly, a majority of the Court has yet to determine what is required to exercise jurisdiction under the stream of commerce theory.

■ The Court first notes that in deciding the issue of personal jurisdiction in a patent infringement case, it should apply the law of the federal circuit, and not that of the fifth circuit. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1564 (Fed.Cir.1994). The Federal Circuit Court of Appeals has not adopted either view of the stream of commerce theory. Instead, in *Beverly Hills Fan,* it concluded that the plaintiff made the required showing under either theory. *See Beverly Hills Fan Co.,* 21 F.3d at 1566.

In *Beverly Hills Fan,* the plaintiff was the holder of a design patent on ceiling fans who sued the defendants in Virginia. Defendants were Ultec, a company incorporated in the People's Republic of China who manufactured the offending fans in Taiwan, and Royal, a company that imported and distributed the fans in the United States. *See id.* at 1560. Royal sold some of the infringing fans to Builder's Square, a retail outlet with stores in Virginia. The evidence showed that a manual accompanied the fans which identified Royal as the source of the fans, and that the fans came with a warranty which Royal would honor. *See id.*

In determining that the defendants were subject to personal jurisdiction, the court relied on evidence that the "defendants, acting in consort, placed the accused fan in the stream of commerce, they knew the likely destination of the products, and their conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there." *Id.* at 1566. The court also relied heavily on the fact that the defendants shipped the fans into the forum State through an established distribution channel. *See id.* at 1565 & 1565 n. 15 (noting the importance of the established distribution channel). Those circumstances, the court determined, were different from those in *World–Wide Volkswagen* where personal jurisdiction was found. *See id.* at 1565. In *Beverly Hills Fan,* the defendants' intentional conduct subjected them to jurisdiction in the forum state. *See id.*

Here, Adell argues that *Beverly Hills Fan* applies and that Elco is subject to personal jurisdiction. It contends that

Elco intentionally makes and ships the infringing products to General Motors with the expectation that they will be used in General Motors pickups that will be shipped to and sold in Texas. Accordingly, it contends that Elco is subject to Texas under the stream of commerce theory.

Elco argues that *Beverly Hills Fan* is distinguishable. First, it states that, unlike the defendants in that case, nothing it does identifies Elco to consumers in Texas. Additionally, Elco does not provide a warranty to customers in Texas. These actions, Elco argues, are the additional conduct in the stream of commerce theory announced by the plurality in *Asahi* that were found to exist by the court in *Beverly Hills Fan. See Asahi,* 480 U.S. at 112, 107 S.Ct. 1026; *Beverly Hills Fan,* 21 F.3d at 1566. Additionally, Elco states that it does not ship any product to Texas through an established distribution channel.

▮ The instant action lies somewhere between *World–Wide Volkswagen* and *Beverly Hills Fan.* After consideration, however, the Court is of the opinion that it is closer to the former and that personal jurisdiction is lacking.

Jurisdiction did not lie in *World–Wide Volkswagen* because the defendant's products were brought into the forum by the unilateral acts of an unrelated third party. *See World–Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. 559. As noted above, jurisdiction was found in *Beverly Hills Fan* because the defendant purposefully shipped the fans into the forum by using an intermediary. *See Beverly Hills Fan,* 21 F.3d at 1565.

Unlike the defendants in *Beverly Hills Fan,* Elco does not ship the device to an established intermediary who then sells the device in Texas. Rather, Elco is another step removed. While the third party, General Motors, is not completely unrelated, Elco is not using it as an intermediary to sell its products in Texas. The affidavits submitted show that Elco

supplies General Motors with components of the allegedly infringing device. General Motors combines the components from Elco with components from others to form its spare tire locking device. General Motors then installs the device on pickup trucks and ships some of those trucks to Texas. Elco has no input on General Motors' distribution, it provides no warranties to Texas customers, it has no advertising in Texas, and it has no direct sales of the accused device in Texas.

More importantly, Elco does not have the established distribution channel to indirectly sell the device in the forum like the defendants in those cases in which the courts have found personal jurisdiction. *See e.g., Beverly Hills Fan,* 21 F.3d at 1565; *Dakota Indus., Inc. v. Dakota Sportswear, Inc.,* 946 F.2d 1384 (8th Cir. 1991); *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137 (7th Cir.1975). The importance of the established distribution channel is that due process requires the nonresident defendant's contacts be purposefully directed toward the forum state. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–74, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The purposeful shipment through an established distribution channel evinces the required purposeful contact. *See Beverly Hills Fan,* 21 F.3d at 1565.

The Court is of the opinion that Elco's shipments of parts to General Motors, who uses them in conjunction with parts obtained from others in its final products that are eventually shipped to Texas, are not purposeful minimum contacts with Texas. Accordingly, the court cannot exercise personal jurisdiction over it based on a stream of commerce theory.

▮ Adell also briefly argues that the court has general, personal jurisdiction over Elco. General jurisdiction is invoked when a defendant has pervasive, systematic, and continuous contacts with the forum state, even though the contacts are unrelated to the cause of action. *See Bearry v.*

*Beech Aircraft Corp.,* 818 F.2d 370, 374–75 (5th Cir.1987).

The only contacts relied on by Adell in support of its general jurisdiction argument are sales in Texas by an independent distributor of other Elco parts. Those sales, involving parts that are not the subject of the alleged patent infringement, constitute less than one percent of Elco's total sales. Such sales by an independent distributor are not enough by themselves to constitute continuous and systematic contact with Texas. *See e.g., Stairmaster Sports/Medical Products, Inc. v. Pacific Fitness Corp.,* 916 F.Supp. 1049, 1052–53 (W.D.Wash.1994) (holding that independent distributor's sales of unrelated products in the forum state, that amounted to approximately three percent of the defendant's sales volume, were insufficient to establish continuous and systematic contacts).

The Court is of the opinion that it lacks personal jurisdiction over Elco based on either a stream of commerce theory or based on general jurisdiction. Because the Court is dismissing the action for lack of personal jurisdiction over Elco, it does not reach the question of venue.

It is therefore **ORDERED** that Defendant's Motion to Dismiss for Lack of Jurisdiction, filed January 11, 1999, is **granted.**

It is **FURTHER ORDERED** that Defendant's Motion to Transfer Venue, filed January 11, 1999, is **declared moot.**

### FINAL JUDGMENT

This action came before the Court, Honorable Robert B. Maloney, presiding, and the issues having been duly considered and a decision having been rendered:

It is **ORDERED** and **ADJUDGED** that Plaintiff's claims against Defendant Dura Operating Corp. f/k/a/ Dura Automobile Systems, Inc., are **dismissed without prejudice.**

It is **FURTHER ORDERED** and **ADJUDGED** that Plaintiff's claims against Defendant Elco Textron, Inc., are **dismissed for lack of personal jurisdiction.**

It is **FURTHER ORDERED** and **ADJUDGED** that all relief not specifically granted herein is denied.