FORST, J.
New York auto dealers Marina Dodge, Inc. and Webster Auto Brokers, Inc. (“the Auto Dealers”) appeal the denial of their respective motions to dismiss the personal injury suit filed against them in Broward County. The Auto Dealers maintain that the trial court erred in rejecting their argument that personal jurisdiction could not be exercised against them in Florida. We agree and therefore reverse the trial court’s order.
The Complaint
In 2003, Plaintiff-Appellee Kristina Quinn (Appellee) purchased a vehicle from the Auto Dealers, both New York corporations. The transaction took place in New York. At the time of the purchase, Appel-lee was a resident of New York and, in fact, subsequently was employed by one of the auto dealers in New York. She later moved to Florida and, in 2007, was involved in an automobile accident with another Florida resident, Defendant Charles Barbera, while driving that vehicle in Bro-ward County. Appellee sustained serious injuries as a result of the collision.
Appellee filed the operative complaint in Broward County, Florida, with claims against the Auto Dealers, alleging that they sold her a defective vehicle and it was a cause of the accident. The Auto Dealers moved to dismiss the complaint for lack of personal jurisdiction, attaching an affidavit *1105 by the Auto Dealers’ president denying any contacts with Florida. The parties then engaged in lengthy and prolonged discovery surrounding the issue of whether the Auto Dealers had sufficient contacts with Florida.
The Auto Dealers’ Activities in, and Contacts with, Florida
In support of her opposition to the Auto Dealers’ motions to dismiss, Appellee submitted four affidavits regarding contacts Marina Dodge had with Florida. None of these affidavits addressed contacts between Webster Auto Brokers and Florida. In response, the Auto Dealers filed a new affidavit from their president, admitting to several “contacts” with Florida on the part of Marina Dodge.[1] The following contacts/activities were identified:
• Marina Dodge was registered with ADESA Sarasota, a Florida corporation which auctions automobiles; however, the Auto Dealers’ owner stated that Marina Dodge did not purchase vehicles from, nor sell vehicles to, ADESA.
• Marina Dodge purchased nine vehicles over the internet from Manheim Orlando, a Florida corporation, between 2006 and 2009; the vehicles were transported from Florida to New York by a North Carolina auto transport company.
• Appellee contends that an additional ten vehicles were purchased by Marina Dodge from Manheim Central Florida between 2006 and 2010; the Auto Dealers’ president responded that these vehicles were not purchased by Marina Dodge, but by a separate entity.
• Marina Dodge had five transactions between 2004 and 2011 with customers that owned extended service warranties purchased from either Fidelity Warranty Services or Century Warranty Services, both Florida companies; the service on the automobiles was performed in New York.
• Marina Dodge entered into an agreement with Auction Direct, a Delaware corporation, to assist Auction Direct in obtaining financing for Auction Direct vehicle purchasers, and some of the financing involved vehicles sold by Auction Direct in Florida; Marina Dodge received three checks, totaling $7,500, from Auction Direct’s subsidiary in Jacksonville, Florida, for Marina Dodge’s efforts with sales in Florida.
After a hearing on the Auto Dealers’ motions to dismiss, the trial court concluded, “I do believe based on the affidavits that were presented to me, it showed that there was indeed continuous contact that took place over years with various entities sufficient to permit jurisdiction to lie in the State of Florida ... as to both [the Auto Dealers].” In responding to an inquiry as to whether this denial would apply to both of the defendants’ motions, the trial court responded, ‘Tes, as to both because of the representations — Webster is using the same dealer number.” The trial court then entered an order denying both motions to dismiss.
We review a trial court’s ruling on a motion to dismiss for lack of personal jurisdiction de novo. Russo v. Fink, 87 So.3d 815, 817 (Fla. 4th DCA 2012).
Analytical Process for Determining Personal Jurisdiction
In Venetian Salami Co. v. Parthenais, 554 So.2d 499, 501-02 (Fla.1989), the Florida Supreme Court approved of a *1106 two-step analytical process for determining personal jurisdiction. The first step requires the trial court to determine whether sufficient facts have been alleged to bring the action within the ambit of Florida’s long-arm statute.[2] Id. at 502 (quoting Unger v. Publisher Entry Serv., Inc., 513 So.2d 674, 675 (Fla. 5th DCA 1987), review denied, 520 So.2d 586 (Fla.1988)); Caiazzo v. Am. Royal Arts Corp., 78 So.3d 245, 249-50 (Fla. 4th DCA 2011). If the long-arm statute applies, the second step requires the trial court to decide whether “minimum contacts” exist between the defendant and the forum state to satisfy due process. Venetian Salami Co., 554 So.2d at 502; Caiazzo, 73 So.3d at 250. The due process analysis is “a more restrictive requirement” than the “broad grant of jurisdiction” under the long-arm statute and is governed by precedent from the Supreme Court of the United States interpreting the Due Process Clause of the United States Constitution. Caiazzo, 73 So.3d at 250-51 (citations omitted).
Personal jurisdiction can exist in two forms: “specific,” in which the alleged activities or actions of the defendant are directly connected to the forum state, and “general,” in which the defendant’s connection with the forum state is so substantial that no specific or enumerated relationship between the alleged wrongful actions and the state is necessary.
Id,, at 250.
A. Specific Jurisdiction
In analyzing the issue of “specific” jurisdiction, a court must first determine whether one of the acts set out in section 48.193(1) of the Florida long-arm statute is applicable to the case at hand. In the instant, case, Appellee has identified two such acts: “[cjomitting a tortious act within this state,” and “[cjausing injury to persons or property within this state arising out of an act or omission by the defendant outside this state ....”§ 48.193(l)(a)2., 6., Fla. Stat. (2012).
In the event that this first prong of examining specific jurisdiction is met, a court must then address the due process prong. This court has comprehensively discussed this standard:
The United States Supreme Court, in a handful of leading cases, laid out the proper due process standard for cases involving specific jurisdiction. First, in the interest of preserving “traditional notions of fair play and substantial justice” a state may exercise specific jurisdiction only over a defendant who has certain “minimum contacts” with the state. Int’l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This so-called “minimum contacts” rule is the “constitutional touchstone” for such jurisdiction. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The Court later clarified that the notion of minimum contacts encompasses only situations in which the defendant has “purposefully avail[ed] [himself or herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.” Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); see also Burger King, 471 U.S. at 474-75, 105 S.Ct. 2174; World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Finally, the Court has stated that simply being able to foresee a product’s arrival in the forum state will never by itself establish minimum contacts over the seller of that product. World-Wide Volkswagen [v. Woodson ], 444 U.S. [286] at 297, 100 S.Ct. 580[, 62 L.Ed.2d *1107 490 (1980) ]. Instead, foreseeability is relevant only when “the defendant’s conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.” Id. This is because an entity that purposefully avails itself of the privilege of conducting activities within the forum state “has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with thé State.” Id.
Caiazzo, 73 So.3d at 251; see also Metnick & Levy, P.A. v. Seuling, 123 So.3d 639, 644 (Fla. 4th DCA 2013); Corporacion Aero Angeles, S.A. v. Fernandez, 69 So.3d 295, 299 (Fla. 4th DCA 2011).
B. General Jurisdiction
General jurisdiction under the Florida long-arm statute applies to “[a] defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.” § 48.193(2), Fla. Stat. (2012). As noted in Caiazzo, the term “substantial and not isolated” has been construed by Florida courts as meaning “continuous and systematic general business contact” with Florida. Caiazzo, 73 So.3d at 250. A similar standard applies in determining whether the due process requirement for finding general jurisdiction has been met. See, e.g., id. at 252 (“Because substantial, continuous, and systematic business contacts is the standard for both subsection (2) of Florida’s long-arm statute and the due process requirement for general jurisdiction, a finding of substantial, continuous, and systematic business contacts will satisfy both the long-arm statute and the due process requirements of [Helicopteros Na-cionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) ].”). Therefore, if the plaintiff fails to meet the due process test of specific jurisdiction, the test for general jurisdiction will rarely, if ever, be met.
Personal jurisdiction over these out-of-state Auto Dealers does not lie in Florida
Although Florida’s long-arm statute allows for a broad grant of jurisdiction over nonresident defendants (at least specific jurisdiction), personal jurisdiction over the Auto Dealers in Florida substantially fails under the due process requirement of personal jurisdiction. With Webster Auto Brokers, the only contact alleged in all of the parties’ filings and affidavits is that Webster Auto Brokers may have sold the vehicle to Appellee in New York and then the vehicle became involved in an automobile accident years later in Florida. This contact alone has been held to be insufficient to support an exercise of personal jurisdiction over a nonresident defendant. See World-Wide Volkswagen, 444 U.S. at 297. Furthermore, Plaintiff has failed to show that Webster Auto Brokers has purposefully availed itself of the privileges of Florida or has engaged in systematic and continuous contacts evidencing a general business relationship with Florida to satisfy due process. Helicopteros, 466 U.S. at 416, 104 S.Ct. 1868; Hansen, 357 U.S. at 253, 78 S.Ct. 1228. Finally, to the extent that it is argued that jurisdiction lies over Webster Auto Brokers because it is an alter ego of Marina Dodge, the rationale below for finding a lack of jurisdiction over Marina Dodge would be applicable to Webster Auto Brokers.
A. Minimum contacts have not been established to support specific jurisdiction
With respect to specific jurisdiction, the affidavits before the trial court *1108 reveal very few contacts between Marina Dodge and the State of Florida. These contacts evince only that, during the operative period of time, Marina Dodge engaged in a handful of isolated transactions with various Florida companies, the majority of which action occurred over the internet or in the State of New York, without having targeted Florida for business as an automobile seller or repair shop or otherwise.
Marina Dodge purchased as many as 19 vehicles from one or two dealers in Orlando, Florida, over a three-year span; however, the Auto Dealers contend that Marina Dodge sold 3,678 vehicles during this time period, all such deals taking place in New York. Nineteen vehicles out of 3,678 is not “minimum contacts” — it is a pittance. It has not been established, nor even alleged, that the purchases from Manheim were part of a program whereby the Auto Dealers contracted with Manheim on a regular and/or frequent basis. The Auto Dealers maintain that the automobile at issue in this case was not one of the cars purchased from Florida, and Appellee has not stated otherwise. The Auto Dealers do not have an office, property, employees, or agents in Florida, nor do they sell vehicles to Florida dealers or customers unless such transactions occur in New York. Thus, although it is likely that an occasional customer of the Auto Dealers was a Florida resident visiting upstate New York, or a New York resident who wintered in Florida, there is no evidence that the Auto Dealers specifically marketed its vehicles to Floridians or that they otherwise solicited business in Florida, or that any vehicles purchased from the Auto Dealers were transported by them to Florida or serviced by them in Florida.
The Auto Dealers did perform service, in New York, on five vehicles pursuant to extended warranty agreements purchased from two Florida companies, but otherwise did not engage in contracting with Florida companies with respect to warranty and extended service contracts, nor did they solicit such work. Similarly, the Auto Dealers’ receipt of $7,500 in payments from a Florida subsidiary of a Delaware company was an attenuated contact with Florida, with the financing agreément being between the Auto Dealers and the Delaware parent company.
Finally, although Marina Dodge was registered with ADESA Sarasota, a Florida corporation, there is no evidence that the Auto Dealers ever purchased vehicles from ADESA or sold vehicles to this company. See Burger King, 471 U.S. at 478, 105 S.Ct. 2174 (holding that a contract alone cannot “automatically establish sufficient minimum contacts” for the purpose of finding specific jurisdiction).
The cases cited by Appellee as support for finding personal jurisdiction are easily distinguishable from the case at hand. In Garris v. Thomasville-Thomas County Humane Society, Inc., 941 So.2d 540, 547-48 (Fla. 1st DCA 2006), the court found general jurisdiction existed, noting the defendant directed significant advertisement towards residents of Florida, “targeting the populous Florida ‘market,’” solicited donations from Floridians, and had ongoing relationship with several Florida animal aid organizations, including arrangements under which it “systematically and continuously” transferred animals to them for adoption in Florida. In Northwestern Aircraft Capital Corp. v. Stewart, 842 So.2d 190, 195 (Fla. 5th DCA 2003), the defendants, a charter flight company, advertised and solicited business in Florida through print advertising and the internet and “the defendants [had], and continue[d] to conduct and derive revenue from, on-demand charter operations into and out of Florida carrying Florida residents into and out of the state.” In Meier ex rel. Meier *1109 v. Sun International Hotels, Ltd., 288 F.3d 1264, 1274 (11th Cir.2002), the defendants maintained several bank accounts in Florida, paid for advertising in Florida, maintained and staffed Florida telephone numbers, and listed a Florida attorney as its “Authorized Representative in the United States” and its “Agent for Service.” In Woods v. Nova Companies Belize Ltd., 739 So.2d 617, 620-21 (Fla. 4th DCA 1999), this court found general jurisdiction due to defendant “selling approximately eighteen percent of its product to Florida importers, moving nearly all of its product through the state, purchasing equipment and supplies from Florida suppliers, utilizing storage facilities in Florida, and establishing essential business relationships in this state, all within its ongoing commercial relationship with Florida .... ”
These four cases involved far more than “minimum contacts” and, in fact, the courts found general jurisdiction through continuous systematic contacts with the state. By contrast, the Auto Dealers’ contacts with Florida were random, attenuated, and “minimal” or “de minimus,” not “minimum.” Moreover, it was not foreseeable that the automobile sold in New York by New York auto dealers to a New York resident would be involved in an accident, four years later, in Florida. Compare AVH Daily Rental Cars, Inc. v. Smith, 640 So.2d 168 (Fla. 1st DCA 1994) (holding an out-of-state car rental agency lacked sufficient minimum contacts to be required to appear in court in Florida where Florida residents were involved in an accident in New Jersey while driving a vehicle rented in Delaware that was to be returned to Delaware at the end of the rental period), with Sierra v. A Betterway Rent-A-Car, Inc., 863 So.2d 358, 360 (Fla. 3d DCA 2003) (finding it foreseeable that the defendant’s vehicles could be involved in accidents in Florida where defendant was aware that its rental car was going to Florida and defendant was “part of a global system of rental agencies”).
The minimum contacts test “is not formulaic or talismanic.” Radcliffe v. Gyves, 902 So.2d 968, 972 (Fla. 4th DCA 2005), disapproved of on other grounds by Kitroser v. Hurt, 85 So.3d 1084 (Fla.2012). The Auto Dealers sold vehicles in New York only, with none sold in Florida. They serviced vehicles in New York, not in Florida. They have no offices in Florida, are not licensed to do business in Florida, employ no business agents in Florida, and maintain no mailing address or telephone listing in Florida. Their contacts with Florida entities were random, isolated and “tenuous.” See Oy v. Carnival Cruise Lines, Inc., 632 So.2d 724, 726 (Fla. 3d DCA 1994). We cannot conclude that the Auto Dealers “purposefully directed” its activities at consumers or businesses in Florida, see Keeton v. Hustler Magazine Inc., 465 U.S. 770, 774, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984), nor can we find that the personal injury litigation “results from alleged injuries that ‘arise out of or relate to’ those activities.” Burger King, 471 U.S. at 472, 105 S.Ct. 2174 (quoting Helicopteros, 466 U.S. at 414, 104 S.Ct. 1868). Accordingly, we find the trial court lacked specific jurisdiction over Marina Dodge and, hence, over Webster Auto Brokers as well.
B. No continuous and systematic business contacts support general jurisdiction
Having found a lack of minimum contacts, it naturally follows that we find a dearth of continuous and systematic general business contacts between the Auto Dealers and Florida to give rise to general personal jurisdiction. Helicopteros, 466 U.S. at 416, 104 S.Ct. 1868; Hanson, 357 U.S. at 253, 78 S.Ct. 1228. “The continuous and systematic general business con *1110 tacts sufficient to confer general jurisdiction present a much higher threshold than those contacts necessary to support specific jurisdiction under section 48.193(1).” Trs. of Columbia Univ. v. Ocean World, S.A., 12 So.3d 788, 792 (Fla. 4th DCA 2009) (emphasis added) (citation and internal quotation marks omitted).
In the instant case, the Auto Dealers did not have “continuing relationships and obligations with citizens” of Florida. Travelers Health Ass’n v. Virginia, 339 U.S. 643, 647, 70 S.Ct. 927, 94 L.Ed. 1154 (1950). The Auto Dealers purchased between nine and nineteen cars from a Florida auto auction over the space of three years, during which time over 3,000 cars were purchased by the Auto Dealers, and these purchases had no relationship to the Auto Dealers’ servicing five cars pursuant to extended warranties or the other “contacts” alleged by Appellee. Rather than continuous, substantial, and systematic, the level of activity between the Auto Dealers and Florida is more properly characterized as isolated, de minimus, and haphazard. The trial court clearly lacked general jurisdiction over the Auto Dealers.
Conclusion
The trial court erred in denying the Auto Dealers’ motions to dismiss for lack of jurisdiction. It is improper for Florida to exercise personal jurisdiction over either of the Auto Dealers in this action. Thus, we reverse the order of denial as to both motions to dismiss and direct the trial court to dismiss the action as against Marina Dodge and Webster Auto Brokers as defendants.

Reversed and Remanded.

WARNER and CONNER, JJ„ concur.

. The Auto Dealers’ president's affidavit maintained that none of these contacts applied to Webster Auto Brokers.

. Section 48.193, Fla. Stat. (2012).