DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**IMERYS TALC AMERICA, INC.** f/k/a **LUZENAC AMERICA, INC.**,
Appellant,

v.

**JUDITH RICKETTS, JOHNSON & JOHNSON, JOHNSON & JOHNSON
CONSUMER COMPANIES, INC.** and **PUBLIX SUPER MARKETS, INC.**,
Appellees.

No. 4D17-3815

[December 19, 2018]

Non-final appeal from the Circuit Court for the Seventeenth Judicial
Circuit, Broward County; Michael A. Robinson, Judge; L.T. Case No. CACE
17-001153 (13).

David M. Gersten, Joseph A. Sacher and Christopher A. Noel of Gordon
Rees Scully Mansukhani LLP, Miami, for appellant.

David J. Sales and Daniel R. Hoffman of David J. Sales, P.A., Jupiter,
and Todd R. Falzone and Karina D. Rodrigues of Kelly Uustal, PLC, Fort
Lauderdale, for appellee Judith M. Ricketts.

KUNTZ, J.

Imerys Talc America, Inc. appeals an order denying its motion to
dismiss a products liability action for lack of personal jurisdiction. Imerys
is a Delaware corporation with its principal place of business in California.
Imerys did not have contacts with Florida, either generally or specifically
related to the actions leading to the complaint. As a result, Imerys is not
subject to personal jurisdiction in Florida, and we reverse the circuit
court's order.

*Background*

Judith Ricketts filed a seven-count complaint against Johnson &
Johnson, Johnson & Johnson Companies, Inc., Imerys, and Publix Super
Markets, Inc. Ricketts sought "recovery for damages as a result of
developing ovarian cancer, which was directly and proximately caused by
the wrongful conduct of the Defendants, the unreasonably dangerous and

defective nature of talcum powder, and the associated effects of developing ovarian cancer."

Imerys moved to dismiss for lack of personal jurisdiction. Relevant to the personal jurisdiction issue, the complaint stated:

> At all material times, the Defendant, IMERYS TALC AMERICA, INC. F/K/A LUZENAC AMERICA, INC., was and is a Delaware corporation, with its principal place of business in California.
>
> At all material times, the Defendant, IMERYS TALC AMERICA, INC. F/K/A LUZENAC AMERICA, INC. was engaged in the business of mining and distributing talcum powder for use in talcum powder based products, including the PRODUCT. Imerys Talc is the successor or continuation of Luzenac America, Inc., and Imerys Talc America, Inc. is legally responsible for all liabilities incurred when it was known as Luzenac America, Inc.
>
> ***
>
> At all material times, all above Defendants were engaged in the research, development, manufacture, design, testing, sale and marketing of the PRODUCT, and placed such products into the stream of commerce with knowledge and intent that such products be sold in the State of Florida.
>
> ***
>
> The Defendant, IMERYS TALC AMERICA, INC. F/K/A LUZENAC AMERICA, INC., has substantial and not isolated contact with the State of Florida and is subject to the general jurisdiction of the Florida courts.

Imerys argued the complaint failed to establish general or specific personal jurisdiction over it. In support of its lack of contacts with Florida, Imerys also filed an affidavit of its director of engineering and quality.

The affidavit stated that Imerys "does not mine talc in Florida," "does not directly sell talc to [Johnson & Johnson] in Florida," "does not directly ship talc to [Johnson & Johnson] in Florida," and "does not directly distribute talc to [Johnson & Johnson] in" the state. Ricketts did not file an affidavit in response to Imerys's motion to dismiss or in support of personal jurisdiction.

2

The circuit court held a hearing on Imerys's motion and concluded the hearing by stating that "this Court will follow the Florida Supreme Court and not the Supreme Court of the United States in this particular case." The court issued an order denying Imerys's motion.

*Analysis*

Determining whether a court can exercise personal jurisdiction over a defendant involves a two-step inquiry. *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989) (citing *Unger v. Publisher Entry Serv., Inc.*, 513 So. 2d 674, 675 (Fla. 5th DCA 1987), *rev. denied*, 520 So. 2d 586 (Fla. 1988)). The court must determine whether the allegations in the complaint bring the action within Florida's long-arm statute and, if so, whether sufficient "minimum contacts" exist between the non-resident defendant and Florida to satisfy due process. *Id.* (citing *Unger*, 513 So. 2d at 675).

Personal jurisdiction can be general or specific. *Rolls-Royce, PLC v. Spirit Airlines, Inc.*, 239 So. 3d 709, 713 (Fla. 4th DCA 2018) (citing *Marina Dodge, Inc. v. Quinn*, 134 So. 3d 1103, 1106–07 (Fla. 4th DCA 2014)).

General personal jurisdiction allows a court to hear any claims against a foreign corporation. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation omitted). It exists when the defendant's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* (citation omitted); *see also Daimler AG v. Bauman,* 571 U.S. 117, 138 (2014) (In *Daimler*, the plaintiffs asked the Court to "approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.' That formulation, [the Court held], is unacceptably grasping.").

Ricketts alleged in her complaint that Imerys was subject to the general personal jurisdiction of the Florida courts. But in response to Imerys's motion to dismiss, Ricketts argued Florida courts can exercise specific personal jurisdiction over Imerys. On appeal, Ricketts explains that she "argued to the trial court that Imerys is subject to specific jurisdiction, not general jurisdiction." Because of these concessions, we proceed to the specific jurisdiction analysis.

"Specific personal jurisdiction exists when 'the alleged activities or actions of the defendant are directly connected to the forum state.'" *Rolls-Royce, PLC*, 239 So. 3d at 713 (quoting *Caiazzo v. Am. Royal Arts Corp.*, 73 So. 3d 245, 250 (Fla. 4th DCA 2011)). When analyzing specific personal

3

jurisdiction, the analysis "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).

The Supreme Court has explained that for specific personal jurisdiction to be appropriate, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). And the connection must arise out of the defendant's own activities, not those of the plaintiff or a third party. *Id.* (citations omitted).

The Supreme Court applied this principle in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), and rejected the "assertion that a *consumer's* unilateral act of bringing the defendant's product into the forum State was a sufficient constitutional basis for personal jurisdiction over the defendant." *Asahi Metal Indus. Co., Ltd. v. Superior Court of California, Solano County*, 480 U.S. 102, 109 (1987) (discussing *World-Wide Volkswagen Corp.*, 444 U.S. at 295-96).

Later, the California Supreme Court held that specific personal jurisdiction was appropriate because some valves sold by Asahi, a Japanese manufacturer, were in California. *Id.* at 110-11. The United States Supreme Court unanimously disagreed, with none of the three separate opinions garnering five votes. A plurality opinion written by Justice O'Connor explained that the "substantial connection" required between a forum state and the defendant "must come about by an action of the defendant purposefully directed toward the forum State." *Id.* at 112 (plurality opinion) (emphasis removed) (citations omitted). The Court stated in the plurality opinion that "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* (plurality opinion).

The test set forth in Justice O'Connor's plurality opinion is known as the "stream-of-commerce" test. Even though the Court's opinion left many questions unanswered, the Court did not address the test again until fifteen years later. *See generally J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011). "The decades following Asahi did little to clarify the stream-of-commerce confusion," and in some respects *J. McIntyre* "did little to refine the lines originally blurred in *Asahi*." Jessica Jeffrey, *The Stream of Commerce Flows On*, 46 SUFFOLK U.L. REV. 137, 137, 145 (2013).

In *J. McIntyre*, the New Jersey Supreme Court held that the courts of that state "can exercise jurisdiction over a foreign manufacturer of a

product so long as the manufacturer 'knows or reasonably should know that its products are distributed through a nationwide distribution system that might lead to those products being sold in any of the fifty states.'" 564 U.S. at 877 (citing *Nicastro v. McIntyre Mach. Am., Ltd.*, 987 A.2d 575, 591, 592 (N.J. 2010)). Six justices on the Supreme Court agreed to reverse the holding.

A plurality opinion written by Justice Kennedy and joined by three justices explained that "[a]s a general rule, the exercise of judicial power is not lawful unless the defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* at 877 (plurality opinion) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). There may be exceptions to this general rule, "[b]ut the general rule is applicable in this products-liability case, and the so-called 'stream-of-commerce' doctrine cannot displace it." *Id.* at 877-78 (plurality opinion). Justice Kennedy wrote that "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State." *Id.* at 882 (plurality opinion).

The other theory advanced focuses on whether a defendant could have foreseen that the product would flow into the forum state. *Asahi Metal*, 480 U.S. at 117 (Brennan, J., concurring). But the plurality opinion in *J. McIntyre* recognized that limiting the analysis to foreseeability is flawed. As an example, allowing a state to exercise personal jurisdiction only because an item is later sold into a state could have unforeseen, and unconstitutional, consequences:

> The owner of a small Florida farm might sell crops to a large nearby distributor, for example, who might then distribute them to grocers across the country. If foreseeability were the controlling criterion, the farmer could be sued in Alaska or any number of other States' courts without ever leaving town.

*J. McIntyre*, 564 U.S. at 885 (plurality opinion).

Instead of foreseeability, "[t]he principal inquiry in cases of this sort is whether the defendant's activities manifest an intention to submit to the power of a sovereign." *Id.* at 882 (plurality opinion). This requires that the defendant intentionally avail itself of the privilege of doing business in the forum state. *Id.* (plurality opinion) (citations omitted).

5

Here, Imerys produced a component in one state (not Florida) and sold it to a different company in a different state. It directed no action or activities to Florida.

These facts, established through an affidavit filed by Imerys, are enough to refute the jurisdictional allegations in the complaint. Ricketts was required to file a counter-affidavit to support her position. *See Airamid Health Servs., LLC v. Anita Sechler Pers.*, 134 So. 3d 550, 554 (Fla. 5th DCA 2014) (When a defendant files an affidavit refuting the jurisdictional allegations in a complaint, "the burden then shifts to the plaintiff to show, by counter-affidavit or other evidence, the basis upon which jurisdiction is proper." (footnote and citation omitted)); *Dev. Corp. of Palm Beach v. WBC Constr., L.L.C.*, 925 So. 2d 1156, 1160 (Fla. 4th DCA 2006) ("When, however, the defendant files affidavits contesting the factual assertions of jurisdiction or the existence of minimum contacts, the burden then shifts to the plaintiff to file counter-affidavits supporting its position.").

An evidentiary hearing is not required, however, when the plaintiff fails to file a counter-affidavit to refute the defendant's affidavit. *Dev. Corp. of Palm Beach*, 925 So. 2d at 1160 ("If those affidavits conflict, then it is incumbent on the trial court to hold a hearing to resolve the conflicts in the evidence and determine the jurisdictional issue.").

Thus, because Ricketts did not file a counter-affidavit, an evidentiary hearing was not required. *See Hilltopper Holding Corp. v. Estate of Cutchin ex rel. Engle*, 955 So. 2d 598, 602 (Fla. 2d DCA 2007) ("If the plaintiff fails to come forward with sworn proof to refute the allegations in the defendant's affidavit and to prove jurisdiction, the defendant's motion to dismiss must be granted." (citations omitted)); *Tobacco Merchants Ass'n of U.S. v. Broin*, 657 So. 2d 939, 942 (Fla. 3d DCA 1995) ("The plaintiffs' failure to respond with a counter-affidavit or other sworn proof establishing the basis for the exercise of personal jurisdiction defeated the exercise" of personal jurisdiction over the defendant. (footnote omitted)).

Finally, Ricketts argues *Ford Motor Co. v. Atwood Vacuum Machine Co.*, 392 So. 2d 1305 (Fla. 1981), requires a contrary result. That case held that "the fact that a nonresident manufactures a component part outside the state and takes no part in the sale, distribution, or marketing of the finished product in the state is no basis for a limitation on jurisdiction." *Id.* at 1313 (citations omitted). But *Atwood* predates all of the recent controlling opinions from the United States Supreme Court and from the Florida Supreme Court itself. *See, e.g., Grogan v. Archer*, 669 So. 2d 289, 294 n.5 (Fla. 5th DCA 1996) ("[T]he *Atwood* decision has been placed in doubt by *Tomashevsky v. Komori Printing Machinery Co., Ltd.*, 715 F. Supp.

1562, 1566 (S.D. Fla. 1989) and it predates important, subsequent decisions such as *Venetian Salami*."); *Smith v. Trans-Siberian Orchestra*, 689 F. Supp. 2d 1310, 1315 (M.D. Fla. 2010) ("[T]he holding in *Atwood* was reached prior to the Supreme Court's dispositive decisions regarding personal jurisdiction of non-resident defendants in *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 [ ] (1985) and *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102 [ ] (1987).").

Our holding adheres to *Asahi Metal*, *Nicastro*, and cases from other jurisdictions applying those cases. For example, the manufacturer of a battery sold to a company for insertion in a product, later sold to Costco for sale in all fifty states, is not subject to a state's jurisdiction simply because Costco sells the product there. *Commerce & Indus. Ins. Co. v. Durofix, Inc.*, No. CV 16-00111 LEK-RLP, 2018 WL 1865868, at *4 (D. Haw. Apr. 18, 2018) (rejecting the argument that E-One was subject to specific personal jurisdiction because, according to the plaintiff, "when E-One sold 300,000 batteries to Mobiletron, E-One knew Mobiletron planned to ship the assembled RL435 LED Lights to Costco, which would distribute the RL435 LED Lights in Hawai'i"). Nor is it sufficient to sell products that merely end up in a state. *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) ("Holland America relies on the proposition that those companies sold products or sponsored web marketing for products that ended up in Washington. Neither is sufficient to sustain jurisdiction here.").

Other federal courts have held that mere awareness that a component would be in a product and sold in a forum cannot, without more, establish personal jurisdiction. *See, e.g.*, *Amburgey v. Atomic Ski USA, Inc.*, No. 2:06-CV-149-GZS, 2007 WL 1464380, at *4 (D. Me. May 17, 2007) ("Even assuming that Atomic Austria had knowledge that the stream of commerce would take its products into Maine, mere awareness is insufficient to constitute purposeful availment."); *Adell Corp. v. Elco Textron, Inc.*, 51 F. Supp. 2d 752, 755 (N.D. Tex. 1999) (The court found no personal jurisdiction over Elco and explained that "Elco supplies General Motors with components of the allegedly infringing device. General Motors combines the components from Elco with components from others to form its spare tire locking device. General Motors then installs the device on pickup trucks and ships some of those trucks to Texas. Elco has no input on General Motors' distribution, it provides no warranties to Texas customers, it has no advertising in Texas, and it has no direct sales of the accused device in Texas."); *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 85 (1st Cir. 1997) ("Even assuming that CMSC had specific knowledge that the stream of commerce would move its tire rims into Puerto Rico—and there is neither evidence nor allegation to that effect—this awareness alone

would not be enough to constitute the purposeful availment which is necessary for a showing of minimum contacts.").[1]

A manufacturer's sale of a component to a party in a second state is insufficient, without more, to subject the manufacturer to the jurisdiction of a third state where the completed product was ultimately sold. *Windsor v. Spinner Indus. Co., Ltd.*, 825 F. Supp. 2d 640, 643 (D. Md. 2011) ("[F]oreign businesses whose products are sold in the forum State by third parties cannot be subjected to personal jurisdiction in the forum merely because they should have known, knew, or even expected their products to reach that forum." (citing *J. McIntyre*, 564 U.S. at 890-91) (Breyer, J., concurring in judgment); *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939, 946 (4th Cir. 1994))).

Here, because Imerys has no contacts with Florida, Florida courts cannot exercise specific jurisdiction over it.

### Conclusion

We reverse the circuit court's order and remand with instructions to dismiss the cause of action against Imerys for lack of personal jurisdiction.

*Reversed and remanded.*

KLINGENSMITH, J., concurs.
TAYLOR, J., dissents with opinion.

---

[1] *See also Stevenson v. Cyprus Amax Minerals Co.*, No. 6:17-CV-417-ORL-40DCI, 2018 WL 3361884, at *4 (M.D. Fla. July 10, 2018) ("As the foregoing analysis demonstrates, Imerys lacks the requisite 'minimum contacts' with Florida to support the exercise of specific personal jurisdiction."); *Jinright v. Johnson & Johnson, Inc.*, No. 4:17CV01849 ERW, 2017 WL 3731317, at *4 (E.D. Mo. Aug. 30, 2017) ("The evidence presented by nonresident Plaintiffs does not establish personal jurisdiction over [Imerys], because it does not establish a connection between Plaintiffs' injuries, the products which caused the harm in this matter, and Defendants' contacts in Missouri."); *Hodjera v. BASF Catalysts LLC*, No. C17-48RSL, 2017 WL 3262501, at *2 (W.D. Wash. July 31, 2017) ("[P]laintiffs fail to satisfy the second prong of the specific jurisdiction test: the requirement that their claim arise out of [Imerys's] purposeful contacts with the forum state."). *But see Bors v. Johnson & Johnson*, 208 F. Supp. 3d 648, 658 (E.D. Pa. 2016) ("Imerys chose to register to do business in Pennsylvania in 2007, years after Pennsylvania enacted its corporate registration statute specifically advising entities of personal jurisdiction arising from their registration to do business. We find, at a minimum, constructive consent to personal jurisdiction over Imerys in Pennsylvania.").

TAYLOR, J., dissenting.

I respectfully dissent. I would affirm the order on appeal because Imerys' affidavit failed to dispute the key jurisdictional allegations of the plaintiff's complaint, and those allegations demonstrate that Florida's assertion of personal jurisdiction over Imerys is constitutional. Because the plaintiff's undisputed allegations establish that Imerys placed its talc into the stream of commerce over a period of decades with the knowledge and intention that it would be sold in Florida as the main ingredient in Johnson & Johnson's widely-available baby powder, Imerys had sufficient minimum contacts with Florida in order to satisfy due process. Moreover, the maintenance of the suit in Florida does not offend traditional notions of fair play and substantial justice.

The relevant jurisdictional allegations in the plaintiff's complaint are as follows. The plaintiff alleged that, for most of her life, she purchased Johnson & Johnson baby powder in Broward County, Florida. She alleged that she used the powder "on a daily basis for multiple decades prior to her diagnosis of ovarian cancer in 2013." She also alleged that, at all material times, Imerys mined and sold talc to Johnson & Johnson, and that Imerys knew Johnson & Johnson was packaging and selling the talc to consumers as baby powder. She further alleged that, at all material times, Imerys "placed such products into the stream of commerce with knowledge and intent that such products be sold in the State of Florida." Finally, she alleged that Johnson & Johnson and Imerys played an integral role in a trade group called the Talc Interested Party Task Force, an anti-regulatory organization formed to defend talc use in response to scientific evidence finding talc to be a carcinogen. Imerys' affidavit disputed none of those material allegations.

Due process requires that a nonresident have sufficient minimum contacts with the forum state such that the maintenance of a suit "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Critical to the due process analysis is whether the nonresident's "conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

For a nonresident defendant to anticipate being haled into a Florida court, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75 (1985)

9

(quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). "The forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *World-Wide Volkswagen*, 444 U.S. at 297–98. Thus, "if the sale of a product . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States . . . ." *Id.* at 297.

The United States Supreme Court has twice attempted to clarify *World-Wide Volkswagen*'s stream-of-commerce doctrine, but has yet to issue a majority opinion as to the proper standard for determining when personal jurisdiction in the forum state can be premised upon a nonresident's placement of goods into the stream of commerce. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011); *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty.*, 480 U.S. 102 (1987).

In *Asahi Metal*, the Supreme Court unanimously held that it would be unreasonable and unfair for a California court to exercise personal jurisdiction over a Japanese manufacturer of tire valve stems with respect to a foreign company's indemnification claim against the manufacturer arising out of a motorcycle accident, given the international context, the heavy burden on the foreign defendant, and the slight interests of the plaintiff and the forum state. 480 U.S. at 114–16. However, the fractured court did not produce a majority opinion on the question of when minimum contacts may be premised on a stream-of-commerce theory. *See id.* at 111–12 (O'Connor, J., plurality opinion) (endorsing the view that the due process clause requires "something more than that the defendant was aware of its product's entry into the forum State through the stream of commerce in order for the State to exert jurisdiction over the defendant"); *id.* at 117 (Brennan, J., concurring in part and concurring in judgment) ("The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise."); *id.* at 122 (Stevens, J., concurring in part and concurring in the judgment) ("Whether or not this conduct rises to the level of purposeful availment requires a constitutional determination that is affected by the volume, the value, and the hazardous character of the components.").

The Supreme Court made a second attempt to clarify the stream-of-commerce doctrine in *Nicastro*, but that case produced yet another

10

fragmented decision.  There, a plaintiff seriously injured his hand while using a metal-shearing machine, and later brought suit in New Jersey against the machine's British manufacturer.  *Nicastro*, 564 U.S. at 878.  The relevant jurisdictional facts were that: (1) an independent distributor on one occasion sold and shipped one machine to the plaintiff's employer in New Jersey; (2) the British manufacturer permitted the independent distributor to sell its machines to anyone in America; (3) and the British manufacturer attended trade shows in major American cities.  *Id.* at 888 (Breyer, J., concurring).  On those facts, the Supreme Court held that it was not constitutionally proper for New Jersey to exercise jurisdiction over the British manufacturer.  *Id.*

Justice Kennedy's plurality opinion, joined by three other justices, took the position that a "[t]he  defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum State."  *Id.* at 882 (Kennedy, J., plurality opinion).

By contrast, Justice Breyer's concurring opinion, joined by Justice Alito, rejected "the plurality's seemingly strict no-jurisdiction rule."  *Id.* at 890 (Breyer, J., concurring).  Instead, Justice Breyer concluded that "the outcome of this case is determined by our precedents."  *Id.* at 887.  Justice Breyer found that the contacts between the British manufacturer and New Jersey were not constitutionally sufficient to support New Jersey's exercise of personal jurisdiction, explaining that "[n]one of our precedents finds that a single isolated sale, even if accompanied by the kind of sales effort indicated here, is sufficient."  *Id.* at 888.

Justice Breyer reasoned that all of the competing tests from *Asahi Metal* had "strongly suggested that a single sale of a product in a State does not constitute an adequate basis for asserting jurisdiction over an out-of-state defendant, even if that defendant places his goods in the stream of commerce, fully aware (and hoping) that such a sale will take place."  *Id.* at 888–89.  However, Justice Breyer did not affirmatively adopt any of the standards from *Asahi Metal*, and instead adhered strictly to Supreme Court precedents and the "limited facts" of the case.  *Id.* at 889–93.

In the present case, the majority relies heavily upon Justice Kennedy's plurality opinion in *Nicastro*, effectively treating it as controlling precedent.[2]  However, "[w]hen a fragmented Court decides a case and no

---

[2] Likewise, in *Southern Wall Products, Inc. v. Bolin*, 251 So. 3d 935 (Fla. 4th DCA 2018), this court quoted heavily from Justice Kennedy's plurality opinion in

single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (internal quotation marks omitted). Thus, under the rule of *Marks*, Justice Breyer's concurring opinion furnished the narrowest grounds for the *Nicastro* decision and represents the holding of the Court.

The narrow rulings of *Nicastro* and *Asahi Metal* do not alter existing Florida precedents holding that a nonresident manufacturer who serves Florida's market by "continuous and systematic activity," even when done indirectly through others, is subject to the jurisdiction of Florida courts. *See Ford Motor Co. v. Atwood Vacuum Mach. Co.*, 392 So. 2d 1305, 1307, 1310–13 (Fla. 1981) (holding that a nonresident manufacturer of component parts in Ford vehicles, who knew that Ford automobiles would be shipped to Florida and sold, was subject to jurisdiction in Florida: "Continuous and systematic activities provide a reasonable basis for the assertion of jurisdiction. . . . [T]he fact that a nonresident manufactures a component part outside the state and takes no part in the sale, distribution, or marketing of the finished product in the state is no basis for a limitation on jurisdiction. . . . [The manufacturer's] lack of direct presence and activity within the borders of Florida is no bar to our holding that the minimum contacts test of *International Shoe* is met.") (italics added); *McHugh v. Kenyon*, 547 So. 2d 318, 319 (Fla. 4th DCA 1989) (holding that Florida had jurisdiction over a nonresident manufacturer of ladders whose products were "placed into the stream of commerce" and who had "a reasonable expectation that large numbers" would be purchased here: "A manufacturer that produces hundreds of thousands of product units that are distributed over a five-year period in the United States, of which at least 6,000 were marketed in Florida, should reasonably anticipate being sued in this state in connection with product defects causing injury."); *Louis Winer Co., Inc. v. San Francisco Mercantile Co., Inc.*, 501 So. 2d 171, 173 (Fla. 4th DCA 1987) (holding that Florida obtained personal jurisdiction over a nonresident manufacturer of component parts of a nightgown where it was undisputed that "the movement of these products into Florida was systematic and continuous").

As this court stated in *Louis Winer*: "[P]ersonal jurisdiction may be asserted over a corporation that delivers its products into the stream of

---

*Nicastro*. To the extent *Bolin* could be read as suggesting that Justice Kennedy's plurality opinion in *Nicastro* represents "the current Supreme Court position on minimum contact analysis," *id.* at 941, I disagree with such a suggestion. However, I believe *Bolin* was correctly decided on its facts.

commerce with the expectation that they will be purchased by consumers in the forum State, but not where the product's presence in that state is a single, isolated occurrence." 501 So. 2d at 173 (internal quotation marks omitted). This statement of law is derived from *World-Wide Volkswagen* and is consistent with Justice Breyer's concurring opinion in *Nicastro*, which represents the most recent controlling opinion from the United States Supreme Court on this topic.

Contrary to the majority's suggestion in this case, neither the United States Supreme Court, nor the Florida Supreme Court, has ever overruled *Atwood* or its progeny. The majority cannot sidestep clear precedents from the Florida Supreme Court and this court by relying upon nonbinding plurality opinions of the United States Supreme Court. While *Atwood* predates other important decisions on personal jurisdiction, the actual holdings of those more recent decisions cannot be said to have overruled *Atwood*.[3] Thus, the panel in this case is bound by *Atwood* and this court's subsequent decisions applying *Atwood*. *See Hoffman v. Jones*, 280 So. 2d 431, 440 (Fla. 1973) (holding that "a District Court of Appeal does not have the authority to overrule a decision of the Supreme Court of Florida"); *Carr v. Carr*, 569 So. 2d 903, 903 (Fla. 4th DCA 1990) (explaining that "we must follow the law of our own cases until we are overruled or until we recede from them").

Because this court is bound by *Atwood* and its progeny, the majority's reliance upon post-*Nicastro* cases from other jurisdictions is misplaced. In any event, while the majority cites cases from other jurisdictions applying a narrow conception of the stream-of-commerce doctrine, the stream-of-commerce case law from other jurisdictions is hardly uniform. Indeed, some out-of-state cases have found the exercise of personal jurisdiction to be proper where a nonresident defendant placed its products into the stream of commerce with the reasonable expectation that substantial sales would take place in the forum state. *See, e.g., Ainsworth v. Moffett Eng'g, Ltd.*, 716 F.3d 174, 179 (5th Cir. 2013) (holding that Mississippi's exercise of personal jurisdiction over an Irish forklift manufacturer in a products liability action did not violate the manufacturer's due process rights, as the manufacturer could have reasonably anticipated being haled into court in Mississippi where its distributor sold 203 forklifts, worth about

---

[3] For example, the Florida Supreme Court's decision in *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499 (Fla. 1989), which did not even mention *Atwood*, did not somehow overrule it. *See Puryear v. State*, 810 So. 2d 901, 905 (Fla. 2002) (proclaiming that the Florida Supreme Court "does not intentionally overrule itself sub silentio").

$3,950,000, to customers in Mississippi); *State v. LG Elecs., Inc.*, 375 P.3d 1035, 1042 (Wash. 2016) (explaining that *Nicatsro* "did not foreclose an exercise of personal jurisdiction over a foreign defendant where a substantial volume of sales took place in a state as part of the regular flow of commerce"), *cert. denied sub nom. Koninklijke Philips N.V. v. Washington*, 137 S. Ct. 648 (2017).

Put simply, because the United States Supreme Court has not yet articulated a clear standard for stream-of-commerce cases, the outcome of this case is dictated by precedents from the Florida Supreme Court and this court. The applicable standard, therefore, is that Florida may exercise personal jurisdiction over a nonresident manufacturer who serves Florida's market by "continuous and systematic activity indirectly through others," notwithstanding the manufacturer's "lack of direct presence and activity within the borders of Florida." *Atwood*, 392 So. 2d at 1313. In other words, minimum contacts exist where a nonresident manufacturer places its products into the stream of commerce with the expectation that large quantities of the products would ultimately be sold in the forum state. *McHugh*, 547 So. 2d at 319.

Here, Imerys has not disputed the plaintiff's allegation that Imerys supplied Johnson & Johnson with the talc for its baby powders "at all material times," which the plaintiff alleged was "multiple decades" before she was diagnosed with cancer in 2013. Because Imerys has not disputed the allegation that it placed its talc into the stream of commerce over "multiple decades" with the knowledge and intent that it would be sold in Florida, I would find that the exercise of personal jurisdiction over Imerys does not violate due process.[4]

In short, this is not a case involving a single isolated sale or even multiple occasional sales. The relevant allegations of the plaintiff's complaint have not been disputed, and they demonstrate "continuous and systematic activity" by Imerys to serve the Florida market. Where a nonresident manufacturer's components move through the stream of commerce in a "continuous and systematic" effort to serve the forum state's market, the fact that the manufacturer "takes no part in the sale,

---

[4] This case is readily distinguishable from *Stevenson v. Cyprus Amax Minerals Co.*, 617CV417ORL40DCI, 2018 WL 3361884, at *1 (M.D. Fla. July 10, 2018), cited by the majority. There, the plaintiff claimed to have been exposed to asbestos-contaminated talc powder between 1942 and 1985, but the evidence showed that Imerys' predecessor supplied Johnson & Johnson with talc for just one month in 1980. By contrast, in this case, the plaintiff has alleged "multiple decades" of exposure to Imerys' talc.

distribution, or marketing of the finished product in the state is no basis for a limitation on jurisdiction." *Atwood*, 392 So. 2d at 1310, 1313. Here, the trial court's ruling is supported by the undisputed jurisdictional allegations in the complaint and by governing Florida case law.

We should therefore affirm the order denying the talc company's motion to dismiss this products liability action for lack of personal jurisdiction.

*          *          *

***Not final until disposition of timely filed motion for rehearing.***